Submitted on remand November 5, 1985, affirmed July 2, reconsideration denied
October 3, petition for review denied October 28, 1986 (302 Or 159)

# PAYLESS DRUG STORES NORTHWEST, INC.,
*Respondent,*

*v.*

# BROWN et al,
*Appellants.*

## (83-1-1014; CA A30985)

722 P2d 31

Peter Fels, Oregon Legal Services Corporation, Pendleton, argued the cause for appellants. With him on the brief was Steven N. Thomas, Pendleton.

Leslie Swanson, Eugene, argued the cause for respondent. With him on the brief were Sharon A. Rudnick and Harrang, Swanson, Long & Watkinson, P.C., Eugene.

Norman J. Weiner, Mark C. McClanahan and Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief *amicus curiae* for Oregon Retail Council.

Dave Frohnmayer, Attorney General, Philip Schradle, Assistant Attorney General, and James E. Mountain, Jr., Solicitor General, Salem, filed a brief *amicus curiae* for State of Oregon.

Anna M. Moran, Portland, filed a brief *amicus curiae* for American Civil Liberties Union of Oregon.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

This case is before us on remand from the Supreme Court. *Payless Drug Stores v. Brown,* 300 Or 243, 708 P2d 1143 (1985). Defendants appealed a judgment against them for $117.74, plus costs. Plaintiff's security guard arrested Bobby Brown, defendants' 15-year old unemancipated daughter, outside plaintiff's Pendleton store for "shoplifting." ORS 164.045. Plaintiff recovered the merchandise. It did not seek "actual damages," but demanded that defendants pay a statutory penalty of $17.74, the retail value of the merchandise, plus a minimum statutory "additional penalty" of $100.

ORS 30.875(2) provides, in part:

> "The parents having custody of an unemancipated minor who takes possession of any merchandise displayed or offered for sale by any mercantile establishment, * * * without the consent of the owner, and with the intention of converting such merchandise or produce to the minor's own use without having paid the purchase price thereof, * * * shall be civilly liable to the owner for actual damages, for a penalty to the owner in the amount of the retail value of the merchandise or produce not to exceed $250, plus an additional penalty to the owner of not less than $100 nor more than $250."

Defendants alleged affirmatively that ORS 30.875(2) is unconstitutional and moved for summary judgment. The court denied the motion, and the jury returned a verdict of $117.74 for plaintiff.

Defendants assigned as error that the trial court denied

> "defendant's motion for summary judgment requesting that the plaintiff's claim be barred for failure to meet the requirements of Oregon law and of the United States Constitution."

We held, however, that we would not review the denial of a motion for summary judgment on an appeal from a judgment entered after a trial, citing *Mt. Fir Lumber Co. v. Temple Dist. Co.,* 70 Or App 192, 688 P2d 1378 (1984). The Supreme Court reversed and remanded for consideration of the first assignment of error. Accordingly, we consider that assignment of error, recognizing that it "was directed against the validity of ORS 30.875 in principle, regardless of the facts in this case," 300 Or at 248, and affirm.

In their assignment, defendants assert that plaintiffs must meet the Oregon "statutory" requirements for pleading and proving "punitive damages," including that plaintiff must have suffered actual damage and that defendants must have engaged in aggravated conduct. It may be that the Supreme Court did not intend that we should consider this non-constitutional issue on remand, but we do so, because it is part of the assignment of error and raises a question of law.

■   Defendants' argument is without merit. The legislature recognized that, although shoplifting may involve a technical conversion, in a conversion action the merchant may not be able to prove damages if the merchandise is recovered and punitive damages could not, therefore, be recovered. The legislature, however, wanted to deter juvenile shoplifing. To accomplish that objective, it provided in ORS 30.875 for civil penalties within the limits it fixed and without regard to pleading or proof of actual damage. *See Brown v. Multnomah County Dist. Ct,* 280 Or 95, 100, 570 P2d 52 (1977); *Nordling v. Johnston,* 205 Or 315, 324, 283 P2d 994, 287 P2d 420 (1955). The statute gives clear notice to parents that they may be subject to civil penalties, not punitive damages. Plaintiff was not required to plead or prove punitive damages.

Defendants also assert that ORS 30.875(2) violates the Due Process clause of the Fourteenth Amendment.[1] They argue that the statute infringes on a fundamental interest of parents in child rearing:

> "Because the parents have absolute liability for shoplifting committed by their children, the only way for a parent to avoid liability is to maintain constant supervision of his or her child. Such constant supervision may be practically impossible, especially where there is more than one child in a family. It also may place severe restraints on an individual's choice in the manner in which the child will be raised. For example, a parent who feels that it is important for the child to gain a sense of independence by allowing the child to engage in certain activities away from home and unsupervised, would be restricted from doing so by the knowledge that the parent might be penalized for shoplifting committed by the child. While a parent may make the choice to allow the child some

---

[1] Defendants do not assert any state constitutional violation.

freedom and to take the risk of potential liability, nevertheless, under O.R.S. 30.875(2), the parent would be penalized for making this choice, even where the parent has taken reasonable or extra precautions to instruct the child against shoplifting. Penalizing the parent for making a good faith child rearing decision that turns out to be an error is placing a severe restriction on the parent's fundamental freedom to raise the child."

Accordingly, defendants assert that the statute must, but fails, to meet the constitutional test of "strict scrutiny," citing *Lassiter v. Dept. of Social Services,* 452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981). In *Lassiter,* however, the issue was whether an indigent parent had a right to appointed counsel at a hearing on termination of parental rights. The court stated that

"a parent's desire for and rights to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' " 452 US at 27.

The parents' interest here is not comparable to the interest that *Lassiter* considered.

■        The discussion in *Bryan v. Kitamura,* 529 F Supp 395 (D Hawaii 1982) is instructive. There the defendants challenged the constitutionality of an Hawaii statute which made parents civilly liable for the tortious acts of their unmarried minor children. The defendants argued that the statute violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment, because it interfered with fundamental parental rights. The court rejected the argument:

"Defendants argue that the Hawaii parental liability statute affects fundamental rights associated with the family. They base their argument on a series of Supreme Court decisions that recognize the importance of personal decisions affecting the family. These cases have held that some personal choices affecting the family are so important that they must be deemed fundamental rights for the purposes of constitutional analysis. For example, the Court has held that freedom of choice in marriage, child bearing, and child rearing, are within this category.

"* * * * *

"*Those rights found to be fundamental by the Court share the characteristic of involving freedom of choice.*

"The Hawaii statute places no real burden on either the decision to have a child or decisions concerning child rearing. This court could not reasonably conclude that the threat of potential tort liability plays any role in the decision of parents whether or not to have children. Likewise, the Hawaii statute does not prevent parents from making decisions concerning their children. In fact, *it promotes the making of such decisions by providing parents with an incentive to play a greater role in the supervision of their children.*" 529 Supp at 398. (Emphasis supplied.)

We take a similar view of ORS 30.875(2). It does not deny parents the right to choose how to teach their children or bar parents from making decisions concerning them, but encourages parents to teach lawful behavior to their children. The standard of review, therefore, is not "strict scrutiny," but whether the statute advances a legitimate state purpose and whether the means chosen are rationally related to achieving that purpose. *See Ferguson v. Skrupa*, 372 US 726, 83 S Ct 1028, 10 L Ed 2d 93 (1963); *Nebbia v. New York*, 291 US 502, 54 S Ct 505, 78 L Ed 940 (1934).

Deterrence of juvenile shoplifting is unquestionably a legitimate state purpose. Defendants argue, however, that ORS 30.875(2) violates due process, because there is no rational relationship between that legitimate purpose and the imposition of vicarious liability on the parents of the child. There is no reported case in Oregon in which a statute imposing vicarious liability on parents has been challenged.[2] See ORS 30.765 (vicarious liability for tort damages subject to a $5,000.00 limit); ORS 30.190 (vicarious liability for damages, including punitive damages, caused by a minor child's violation of the intimidation and harassment statute, up to a

---

[2] The cases that defendants cite deal with vicarious imposition of punitive damages, but do not involve parents: *Kirkpatrick v. U.S. National Bank*, 264 Or 1, 502 P2d 579 (1972) (punitive damages may be allowed against a minor's estate); *Pearson v. Galvin*, 253 Or 331, 454 P2d 638 (1969) (punitive damages for false imprisonment not recoverable from estate of defendant); *Osborn v. Teague Chevrolet*, 254 Or 486, 459 P2d 988 (1969) (corporation may be vicariously liable for punitive damages even though no corporate officer expressly authorized act of fraudulent misrepresentation); *Ashcraft v. Saunders*, 251 Or 139, 444 P2d 924 (1968) (statutory punitive damages may not be recovered against the estate of a deceased wrongdoer); *Lane v. Schilling*, 130 Or 119, 279 P 267 (1929) (a receiver is not liable for punitive damages for acts of the bankrupt corporation's former officers.) Defendants rely most heavily, however, on *Eastman v. Jennings-Mcrae Logging Co.*, 69 Or 1, 138 P 216 (1914). The case concerned double damages for the destruction of timber by fire and did not involve a civil penalty.

$5,000 limit); ORS 339.270 (vicarious liability for damage to school property up to a $5,000 limit).[3] In *Piscataway Township Board of Education v. Caffiero*, 86 NJ 308, 431 A2d 799 (1981), however, parents challenged a statute which imposed vicarious liability for damage that their children caused to school property. The court stated:

> "In most instances, strict or vicarious liability has its source in a policy decision that the person held liable is in a position to spread the costs of injury over a large portion of the public. *See* W. Prosser, *The Law of Torts,* § 69 at p 459 & § 75 at p 494 (4th ed 1971). Some prominent examples of liability based on costs spreading principles are strict products liability, an employer's liability under worker's compensation, and an employer's vicarious liability under the doctrine of 'respondent superior' for his employee's tortious conduct. Underlying each, at least in its modern application, is a policy decision that it is better for the consuming public to bear the costs of injuries than the innocent injured party.

> "Under the circumstances of this case, however, the innocent injured party is the public itself. Spreading of costs is obviously not the purpose of N.J.S.A. 18A:37-3 since the easiest way to accomplish that purpose would have been to impose no liability on the parents and compel the public to pay for the losses through tax dollars. Manifestly, a different policy decision is behind imposition of vicarious liability through N.J.S.A. 18A:37-3. The legislature apparently believed that it was more important to compensate the public and to deter delinquent behavior than to spread costs. We cannot say that such purposes are unreasonable and therefore an invalid basis for imposition of vicarious liability. As long as the means chosen by the legislature have a rational relation to obtaining the objective sought, the statute will not be in violation of due process of law as an arbitrary or capricious enactment." 86 NJ at 319.

We cannot say that the imposition of vicarious liability on parents under ORS 30.875(2) is not rationally related

---

[3] Plaintiff cites Oregon cases in which vicarious liability for punitive damages has been imposed. *See Reeder v. Kay,* 282 Or 191, 577 P2d 925 (1978) (principal's vicarious liability for acts of agent); *Stroud v. Denny's Restaurant,* 271 Or 430, 532 P2d 790 (1975) (employer's vicarious liability for acts of employee); *Wright v. ICOA Life Ins.,* 250 Or 349, 442 P2d 614 (1968) (corporation's vicarious liability for acts of agent).

to the legitimate legislative purpose of detering juvenile shoplifting. Testimony before the legislature described the prevalence of juvenile shoplifting and the unlikelihood that it would be criminally prosecuted. The legislature believed that part of the reason for the extent of shoplifting is the failure of parents to control their children.[4] The legislature intended to give parents an incentive to exercise stricter control.

Defendants respond, however, that vicarious liability does not promote greater parental control. They argue that a parent can only avoid vicarious liability by impossibly close supervision of a child and that to penalize the parent for acts which he cannot prevent is "clearly unreasonable." We cannot, however, say that the legislature may not rationally determine that imposition of vicarious liability will encourage parents to exercise greater influence over their children's activities.[5]

Defendants also argue that there is no rational relationship between the harm that a merchant suffers and the civil penalties imposed, because often the merchant suffers no damage, yet the penalties can reach a maximum of $500.[6] The legislative provision of civil penalties of that magnitude, however, is not an unreasonable means to accomplish the legislative purpose. Moreover, the penalties are limited in amount, and within the limits the jury may set the amount

---

[4] *See, e.g.,* 1979 Hearings on SB 893, House Committee on Judiciary, May 24, 1979, pp. 12-13.

[5] We also reject defendants' argument that ORS 30.875(2) imposes liability on parents solely because of their status as parents. Defendants cite *Lambert v. California,* 355 US 225, 78 S Ct 240, 2 L Ed 2d 228 (1957), which held unconstitutional the California felony registration statute as a denial of due process and *Robinson v. California,* 370 US 660, 82 S Ct 1417, 8 L Ed 2d 758 (1962), in which the Court held unconstitutional as a cruel and unusual punishment in violation of the Eighth Amendment a California criminal statute which it made it a crime to be addicted to the use of narcotics. Here, the parent is responsible for civil penalties, not because of status as a parent, but because the parent's child shoplifts. Also, the statute is not vague. A parent is liable if the plaintiff proves that the child is a minor, is in the parent's custody and has taken plaintiff's merchandise without paying for it with the intention of converting the merchandise to the child's own use. The standards for imposition of liability are clear and specific.

[6] Although the merchandise may be recovered and the administrative costs to a merchant from each shoplifting incident may be small, the amounts of the penalties are not unrelated to the range of the merchant's average costs per incident of a program to deter juvenile shoplifting. See 1979 Hearings SB 893, House Committee on Judiciary, May 24, 1979, pp. 19-20.

which it believes will help deter future unlawful conduct by encouraging parental care.[7]

Affirmed.

---

[7] The legislature has not made a standardless delegation to the merchant to decide the amount of the penalty. ORS 30.875(2) sets its limit, and the amount is subject to jury determination.