GREGORY H. PORTER, APPELLANT, V. HOLLY JENSEN, DIRECTOR, DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA, APPELLEE.

390 N.W.2d 511

Filed July 18, 1986. No. 85-537.

Mary Morgan Cote of Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and CHEUVRONT, D.J.

CAPORALE, J.

Gregory H. Porter appeals the district court's dismissal of his appeal from the order of the director of the Department of Motor Vehicles, Holly Jensen, which, pursuant to the implied consent statutes, suspended his operator's license for 1 year as the result of his failure to submit to a breath test. Porter's

operative assignments of error are that (1) there is insufficient evidence to support the suspension, in that the evidence fails to establish that the officer requiring him to submit to the breath alcohol test had reasonable grounds to believe he was operating or was in actual physical control of a motor vehicle on a public highway while under the influence of alcohol, and (2) the relevant statutes deprive him of equal protection and due process in violation of the 14th amendment to the U.S. Constitution and article I, §§ 1 and 3, of the Nebraska Constitution. We affirm.

Porter adduced evidence that at approximately 11:45 p.m. on April 20, 1984, Officer Patrick Hines of the Grand Island Police Department was directed to a vehicle which was apparently high centered on railroad tracks crossing a public road. Upon arriving at the scene, Hines observed Porter standing in front of a vehicle and apparently looking for something. Upon inquiry, Porter replied that he was looking for the keys to the vehicle. Hines and Porter then unsuccessfully attempted to push the vehicle. While in this process, Hines noticed that Porter emitted a strong odor of alcohol, slurred his speech, and swayed when he walked. Hines suspected Porter was intoxicated and asked him to perform some field sobriety tests, which Porter failed. Porter also admitted that he had been drinking.

Hines then placed Porter under arrest and drove him to the police station for a breath test. While Porter seemed to have no difficulty breathing, he did not produce an adequate breath sample. As a consequence, Hines, pursuant to the provisions of Neb. Rev. Stat. § 39-669.15 (Reissue 1984), reported to the director that Porter had refused to submit to a breath test.

Hines admitted that he never saw Porter driving the vehicle and that he never asked Porter how long he had been at the scene, whether he had left the scene, or whether he was the only person at the scene, even though he was the only person Hines saw. However, Hines did inquire as to whether Porter or anyone else had gotten hurt when Porter drove into a large hole or ditch in the area. Porter replied that no one had gotten hurt. Porter further stated that if he found the keys, he would park the vehicle and walk home.

Following adduction of the foregoing evidence, Porter rested, and the director successfully moved for a dismissal of the appeal.

Neb. Rev. Stat. § 60-420 (Reissue 1984) provides that in appeals from the director's decision to revoke an operator's license, the "district court shall hear the appeal as in equity without a jury and determine anew all questions raised before the director." Normally, the trial court's findings in a revocation case under the implied consent statutes are reviewed de novo on the record by this court. *Jensen v. Jensen*, 222 Neb. 23, 382 N.W.2d 9 (1986). However, in this case the district court, at the close of Porter's evidence, granted the State's motion to dismiss the appeal to that court.

In sustaining a motion to dismiss, the court resolves the controversy as a matter of law, an action which can be taken only when the evidence is such that reasonable minds can draw but one conclusion. Further, the party against whom the motion to dismiss is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence; if there is any evidence or inference which can be drawn in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *In re Estate of Price, ante* p. 12, 388 N.W.2d 72 (1986); *Poppe v. Petersen*, 221 Neb. 877, 381 N.W.2d 534 (1986).

Thus, in the posture of the case the district court's judgment of dismissal can be affirmed only if the evidence presents no question of fact.

The standard by which to judge whether a question of fact is presented is set forth in Neb. Rev. Stat. § 39-669.08(2) (Reissue 1984), which provides:

Any law enforcement officer . . . may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor to submit to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her body fluid, *when the officer has reasonable grounds to*

*believe that such person was driving or was in the actual physical control of a motor vehicle* upon a public highway in this state while under the influence of alcoholic liquor. (Emphasis supplied.)

The relevant inquiry, then, is whether Porter's evidence led to no inference other than that Hines had reasonable grounds to believe Porter had been driving or had been in actual physical control of a motor vehicle while under the influence of alcohol. *Emmons v. Jensen*, 221 Neb. 444, 378 N.W.2d 147 (1985).

In *Emmons* an officer called to the scene of a single-vehicle personal property accident observed a gouge mark in the pavement, which he was able to follow over a distance of several blocks to the parking lot of a bar. There the gouge mark led to the right front wheel of a vehicle. It appeared that the gouge mark the officer had followed was caused by the exposed right front wheel rim of that vehicle scraping the pavement as it traveled. Through the license plate number, the officer then determined the registered owner of the vehicle. Some bystanders in the lot informed the officer that a woman had been driving the vehicle and that she had entered the bar. The officer and one of the bystanders then entered the bar, and the bystander pointed out the woman he had seen leaving the vehicle. A man leaving the bar also pointed her out and told the officer that she had just come into the bar, claiming her vehicle was on fire. The woman, who ultimately admitted to being the owner of the damaged vehicle found in the lot, produced a strong alcohol odor, had dilated pupils, slurred her speech, and demonstrated difficulty in walking. We held that the arresting officer had reasonable grounds to believe the woman had either driven the vehicle which left the gouge marks or had been in actual physical control of it while under the influence of alcohol.

The evidence in this case is no less probative of the issue than that in *Emmons*. Accordingly, in the absence of any other evidence, Porter's statements that no one was injured when he hit the hole and that if he found the keys, he would park the vehicle and walk home establish as a matter of law that Hines had reasonable grounds to believe that Porter had been driving or had been in actual physical control of the vehicle which

Hines discovered at the scene. Porter's failure to successfully perform the field sobriety tests, his admission that he had been drinking, his slurred speech, and his inability to walk normally, together with the odor he emitted, were sufficient as a matter of law to provide Hines with reasonable grounds to believe that Porter was under the influence of alcohol when he was either operating the vehicle or had been in actual physical control over it.

There is no merit to Porter's first assignment of error.

Porter next contends that by not distinguishing between types of drivers, the implied consent law harms occupational drivers more than those who drive solely for pleasure and therefore violates the equal protection clauses of the 14th amendment to the U.S. Constitution and article I, § 1, of the Nebraska Constitution. He also claims that the law violates the due process clauses of the 14th amendment to the U.S. Constitution and article I, § 3, of the Nebraska Constitution.

The cited sections of article I of the Nebraska Constitution provide:

> Section 1. . . . All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty and the pursuit of happiness. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed.

> Sec. 3. . . . No person shall be deprived of life, liberty, or property, without due process of law.

The 14th amendment to the U.S. Constitution prohibits a state from, among other things, denying any person equal protection of the laws and from depriving any person of property without due process of law.

Article I, § 1, of the Nebraska Constitution does not concern itself with equal protection of the laws. It is article III, § 18, which deals with disparate treatment by concerning itself with special legislation. See *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984). However, since this section of the Nebraska Constitution is neither cited nor argued, and since Porter makes no separate due process

argument, we concern ourselves only with the equal protection clause of the 14th amendment to the U.S. Constitution.

It is true that the current version of Neb. Rev. Stat. § 39-669.34 (Reissue 1984) does not provide for the issuance of occupational driving permits to implied consent violators, whereas the earlier version did provide for such permits. § 39-669.34 (Reissue 1978). That change, however, does not render the present statute violative of the equal protection clause in question.

As noted in past cases, the long-range objective of the implied consent statutes is to reduce the carnage caused by intoxicated drivers by getting them off the roads. *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984); *Ziemba v. Johns*, 183 Neb. 644, 163 N.W.2d 780 (1968).

We have previously determined that driving is not a fundamental right and that drunk drivers are not a suspect class for purposes of legislative classification. Consequently, it is not necessary that the end the Legislature seeks to effectuate with respect to drunk drivers be a compelling state interest and that the means employed to accomplish that end be such that no less restrictive alternative exists. All that is required is that there be a rational relationship between a legitimate state interest and the statutory means selected by the Legislature to accomplish that purpose. *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985).

There can be no argument but that getting drunk drivers off the roads is a legitimate state purpose. See *State v. Michalski, supra*. Neither can there be any quarrel with the proposition that there is a rational relationship between testing those who present reasonable grounds for the belief that they were intoxicated when driving or in actual physical control of a motor vehicle and getting drunk drivers off the roads. A drunk occupational driver presents no less risk to others than does a drunk pleasure driver. Thus, the Legislature is not compelled to treat one of those two groups of drivers differently than the other.

Other jurisdictions which have considered the question have rejected Porter's argument. *Gableman v. Hjelle*, 224 N.W.2d 379 (N.D. 1974), held that the equal protection clause of

neither its state nor the federal Constitution was violated by a statute permitting issuance of a temporary, restricted operator's license to certain persons convicted of driving while under the influence and leaving the scene of an accident but not permitting such an issuance for implied consent violations. The court reasoned that, the revocation being mandatory, all who refuse to submit to a chemical test are treated in the same manner.

*Winter v. Mayberry*, 533 P.2d 968 (Okla. 1975), likewise holds the disparate treatment presents no equal protection problem, since the driving under the influence statute, under which the appellant's license had been suspended, treated all drivers equally. The court rejected appellant's argument that the statute prevented him from earning a living, since he was a truckdriver with no other skills.

In *Murphy v. Department of Motor Vehicles*, 86 Cal. App. 3d 119, 150 Cal. Rptr. 20 (1978), the court held that the mandatory suspension provisions of the implied consent law did not violate equal protection even though its application in some cases resulted only in deprivation of the right to pleasure driving, while in other cases it deprived the motorist of the right to employment. The court noted that the occupational driver, since he or she spends more time on the road, poses an even greater threat to safety than does the pleasure driver. In accord is *Pepin v. Department of Motor Vehicles*, 275 Cal. App. 2d 9, 79 Cal. Rptr. 657 (1969).

The court in *Heer v. Dept. of Motor Vehicles*, 252 Or. 455, 450 P.2d 533 (1969), also found no equal protection violation, since the implied consent law treated all licensed drivers alike.

We find no merit in Porter's contention that his right to equal protection of the laws under the 14th amendment to the U.S. Constitution has been violated.

Neither of Porter's assignments of error having merit, the judgment of the district court is affirmed.

AFFIRMED.