# FIRST BANK SOUTHEAST, N.A., Plaintiff-Appellant,

v.

# Michael BENTKOWSKI, Defendant,

# Richard BENTKOWSKI and Diane Bentkowski, Defendants-Respondents.

Court of Appeals

*No. 86–1386. Submitted on briefs January 29, 1987.—Decided March 25, 1987.*

(Also reported in 405 N.W.2d 764.)

On behalf of the plaintiff-appellant the cause was submitted on the briefs of *Jonathan A. Mulligan* of *Ruetz, Davison & Mulligan, S.C.* of Kenosha.

On behalf of the defendants-respondents the cause was submitted on the brief of *Nancy Barasch* of *John Crosetto Law Offices, S.C.* of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. This case requires us to determine whether sec. 895.035, Stats. (1983–84), the parental liability statute, allows a parent to offer the defense of contributory negligence. We conclude that the statute is clear in providing for absolute liability once the elements have been established, and we therefore reverse the circuit court's judgment dismissing First Bank Southeast's amended complaint against Richard and Diane Bentkowski.

The facts are not in dispute. On twelve occasions between February 29, 1984 and May 23, 1984, Michael Bentkowski (Michael), a minor, forged his father's signature on various savings withdrawal forms and withdrew a total of $2,909.91 from three separate savings accounts maintained by the elder Bentkowski at First Bank Southeast, N.A. When Bentkowski discovered the withdrawals, he successfully demanded that the bank restore the funds, plus interest.

The bank then sued Michael and the Bentkowskis, seeking to recover the funds it had been required to pay Bentkowski as a result of the unauthorized withdrawals. The bank's cause of action against the Bentkowskis was based upon the parental liability imposed by sec. 895.035, Stats. (1983–84).[1] Among the

---

[1]Section 895.035, Stats. (1983–84), was amended by secs. 12–15, 1985 Wis. Act 311. The amended statute raises the

affirmative defenses raised in the Bentkowskis' answer was the contention that the bank was negligent in permitting Michael to make the withdrawals. Pursuant to a stipulation, judgment in the amount of $3,284.95 was eventually entered against Michael. The bank then moved for summary judgment against the Bentkowskis based upon sec. 895.035.

The circuit court denied the motion, ruling that the defense of contributory negligence was available in a sec. 895.035, Stats. (1983–84), action and that the issue of the bank's negligence in allowing Michael to make the unauthorized withdrawals was a question of fact for trial. Subsequently, pursuant to certain stipulations by counsel, the trial court dismissed the complaint. In so doing, the court found that: (1) the statutory elements imposing parental liability under sec. 895.035 had been established; (2) the defense of contributory negligence was available to the Bentkowskis; and (3) the bank's payment to Michael on the twelve forgeries constituted negligence as a matter of law on a theory of strict liability. The order for judgment contained counsel's stipulation that the following issue would be the basis for appeal:

> In this situation where the plaintiff bank concedes that it cannot show, or in any event would not attempt to show, any negligence on the part of the two parent defendants, and where the plaintiff bank concedes that if the defense of contributory negligence is available to the two parent defendants that such negligence would exceed any possi-

maximum recovery to $2,500 for any one act and contains several other provisions which do not affect our holding here. The new and amended provisions first apply to acts committed on May 7, 1986. *See* sec. 19, 1985 Wis. Act 311.

ble negligence on the part of the two parent defendants, is the defense of contributory negligence on the part of the plaintiff bank available to the two parent defendants, in an action brought against them under the parental responsibility law based upon the forged withdrawals made by the minor son defendant from the accounts of the two parent defendants at the plaintiff bank?

The construction of a statute presents a question of law which we determine without deference to the decision of the trial court. *Hainz v. Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984). The primary source for statutory construction is the language of the statute itself; if it is plain, we proceed no further. *State Historical Society v. Village of Maple Bluff,* 112 Wis. 2d 246, 252–53, 332 N.W.2d 792, 795 (1983).

Section 895.035(1), Stats. (1983–84), provides:

> The parent or parents having legal custody of an unemancipated minor child, in any circumstances where he or they may not be otherwise liable under the common law, shall be held liable for damages to property or for personal injury attributable to a wilful, malicious or wanton act of the child not to exceed $1,000, in addition to taxable costs and disbursements directly attributable to any wilful, malicious or wanton act of the child.

The bank contends that the statute is clear in imposing liability based solely upon the existence of the parent-child relationship as outlined in the statute and the minor child's commission of a wilful, malicious or wanton act; once these elements are estab-

lished, as they were here, liability follows as a matter of law.

We conclude that this interpretation of sec. 895.035, Stats. (1983–84), is correct. The statute states that when the specified conditions exist, the parent or parents "shall be held liable." No element of parental culpability is made relevant to liability. Liability is absolute. Absolute liability, in contrast to strict liability, is imposed for public policy reasons and admits of no exceptions or defenses. *Powers v. Hunt-Wesson Foods, Inc.,* 64 Wis. 2d 532, 536, 219 N.W.2d 393, 395 (1974).

This interpretation of the parental liability statute is reflected in *Anello v. Savignac,* 116 Wis. 2d 246, 342 N.W.2d 440 (Ct. App. 1983). There, the court of appeals upheld the dismissal of a teacher's negligence claim against the parents of a student who assaulted him, because he had not proved that the parents were negligent in failing to control the boy; however, the court also, without comment, upheld the $1,000 judgment against the parents for their statutory liability. *Id.* at 249–50, 342 N.W.2d at 441–42.

The Bentkowskis contend that sec. 895.035, Stats. (1983–84), must be read as imposing liability based on a presumption of parental negligence because such is the common law basis for concepts of parental liability and because a contrary reading raises due process concerns. Neither argument persuades us. Regarding the first, the statute expressly states that it imposes liablity where the parents "may not be otherwise liable under the common law."

Regarding the second, we hold that the parental liability statute represents a valid exercise of the state's police power. Due process requires that the means chosen have a reasonable and rational relationship to the purpose or object of the statute; if they have, and the object is a real and proper one, the exercise of police power is valid. *Oliver v. Travelers Ins. Co.,* 103 Wis. 2d 644, 647, 309 N.W.2d 383, 385 (Ct. App. 1981). Giving parents a financial incentive to prevent their minor children from inflicting personal injury and property damage is a means rationally related to the legitimate state interest in curbing vandalism. Similar statutes in other states have widely been upheld. *See, e.g., Rudnay v. Corbett,* 374 N.E.2d 171, 174–75 (Ohio Ct. App. 1977); *see also* Annotation, *Validity and Construction of Statutes Making Parents Liable for Torts Committed by their Minor Children,* 8 A.L.R.3d 612, 615–16 (1966 & Supp. 1986), and cases cited therein. We conclude that the liability statute does not raise such due process concerns that we must construe the language to avoid unconstitutionality. *See State v. Mahone,* 127 Wis. 2d 364, 369, 379 N.W.2d 878, 881 (Ct. App. 1985).

Finally, the Bentkowskis point to the absurdities which they claim will result if a plaintiff's contributory negligence can never be considered in determining parental liability under the statute. They hypothesize the scenario of a tavern keeper who negligently allows a sixteen-year-old to become intoxicated and sues the minor's parents after the drunken youth breaks a window, or of a bullying teacher who sues a student's parents after the teased and goaded child retaliates with violence.

■ The statute imposes liability upon parents only for the "wilful, malicious or wanton" acts of their minor children. Parents of a minor whose act does not meet such a standard will not be subject to the statute. An intentional act is not necessarily a wilful one; "wilful" may signify some degree of malice. *Department of Transp. v. Transportation Comm'n,* 105 Wis. 2d 678, 682, 315 N.W.2d 371, 373 (Ct. App. 1981), *aff'd,* 111 Wis. 2d 80, 330 N.W.2d 159 (1983).[2] Thus, if the contributing actions of the plaintiff are such as to make the minor's actions excused or otherwise not "wilful, malicious or wanton," no parental liability will attach. We are confident that the absurd consequences predicted by the Bentkowskis are not the inevitable results of the plain meaning of the parental liability statute.

While the absence of a contributory negligence defense may have harsh results in some instances,[3] the

---

[2] Other jurisdictions construing similar parental liability statutes have held that "wilful" connotes the intentional doing of a harmful or unreasonable act without just cause or excuse, and that there is little difference between "wilful" and "malicious." *See, e.g., Potomac Ins. Co. v. Torres,* 401 P.2d 308, 309 (N.M. 1965); *Deliso v. Cangialosi,* 117 Misc. 2d 105, 107, 457 N.Y.S.2d 396, 398 (N.Y. Civ. Ct. 1982), *aff'd,* 124 Misc. 2d 822, 480 N.Y.S.2d 315 (N.Y. App. Term 1984).

[3] In ruling on the bank's summary judgment motion, reserve circuit judge Thomas Corbett reasoned with some force as follows:

The effect of the plaintiff's argument ... is simply to state: yes, we paid out money on forged documents to a minor; yes, we failed to protect our depositor's accounts; yes, we restored our depositor's accounts and now we will proceed against the minor's parents to recover the loss we incurred; and no, you may not inquire into our conduct; no, you may not ascertain whether we handled the transactions with the minor stupidly, negligently or

statutory language is plain and the effects are neither violative of due process requirements nor so absurd that an alternative construction is required.[4]

*By the Court.*—Judgment reversed and cause remanded.

whatever; simply this is it, we participated with a minor in handling forged documents and incurred a loss, you are his parents, pay us back.

[4]Neither party has raised the issue of whether the minor's forgery of his father's signature to make unauthorized withdrawals resulted in "damages to property or ... personal injury" within the meaning of the statute as it read prior to the 1986 amendments, which added "the value of unrecovered stolen property" to the damages for which parents are liable. *See* sec. 12, 1985 Wis. Act 311. We assume, therefore, for the purposes of this appeal, that Michael's actions fall within the scope of the statute.