DISTINCTIVE PRINTING AND PACKAGING COMPANY, APPELLANT, V.
VERLYN R. COX ET AL., APPELLEES.

443 N.W.2d 566

Filed July 21, 1989.   No. 87-654.

Richard E. O'Toole and Mark A. Weber, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

P. Shawn McCann, of Sodoro, Daly & Sodoro, for appellees Cox.

Gordon M. Ryan, of Ryan & Seidler, for appellee Hernandez.

Eugene P. Welch, of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellees McCormick.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Plaintiff-appellant, Distinctive Printing and Packaging Company, seeks to recover $178,495.94 in damages from defendants-appellees, Verlyn R. Cox; his wife, Martha L. Cox; and Susana Hernandez, under the provisions of the parental liability statute, Neb. Rev. Stat. § 43-801 (Reissue 1988),

asserting the defendants' respective resident minor sons willfully and intentionally set fire to plaintiff's property. So far as is relevant to this appeal, the defendants demurred on the ground that plaintiff's petition failed to state a cause of action because the statute is unconstitutional on state and federal equal protection and due process grounds. The district court sustained the demurrers and thereafter dismissed plaintiff's petition. In its appeal to this court, plaintiff asserts that the district court's dismissal of its action on the ground that the foregoing statute is unconstitutional in its entirety is erroneous. Pursuant to this court's order, the parties have also explored whether the statute suffers constitutional infirmity by imposing excessive fines for the failure to control one's errant children, or otherwise exacts penalties or punitive damages. Determining that the statute, whether wise or unwise, is constitutional, we reverse the district court's order of dismissal and remand the cause for further proceedings.

## EQUAL PROTECTION

The statute reads as follows:

> The parents shall be jointly and severally liable for the willful and intentional infliction of personal injury to any person or destruction of real and personal property occasioned by their minor or unemancipated children residing with them, or placed by them under the care of other persons; *Provided*, that in the event of personal injuries willfully and intentionally inflicted by such child or children, damages shall be recoverable only to the extent of hospital and medical expenses incurred but not to exceed the sum of one thousand dollars for each occurrence.

§ 43-801.

Defendants first contend that limiting the liability of parents whose children inflict intentional personal injury but not limiting the liability of parents whose children inflict intentional property damage denies the latter class of parents equal protection of the law. Neb. Const. art. III, § 18, prohibits the Nebraska Legislature from, among other things, passing any law which grants "any special or exclusive" privilege or

immunity, and further provides that, except for certain matters relating to loans and installment sales, "where a general law can be made applicable, no special law shall be enacted." Thus, article III, § 18, concerns itself with disparate treatment in much the same manner as does the language of U.S. Const. amend. XIV, which prohibits a state from making or enforcing any law which denies any person within its jurisdiction "the equal protection of the laws." See, *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988); *Porter v. Jensen*, 223 Neb. 438, 390 N.W.2d 511 (1986).

Although the power of classification rests with the Legislature of this state, a statute which makes an artificial and baseless classification violates article III, § 18. *Snyder v. IBP, inc.*, 229 Neb. 224, 426 N.W.2d 261 (1988). The Legislature is permitted to classify persons as long as, absent implication of a fundamental right or suspect classification, the legislative categorization has a rational basis. *Willis v. City of Lincoln, ante* p. 533, 441 N.W.2d 846 (1989); *School Dist. No. 46 v. City of Bellevue*, 224 Neb. 543, 400 N.W.2d 229 (1987). The defendants do not suggest that the statute involves a fundamental right or suspect classification. Thus, the task is one of determining whether a rational basis exists for the classification at issue. See, *Payless Drug Stores v. Brown*, 80 Or. App. 255, 722 P.2d 31 (1986), *rev. denied* 302 Or. 159, 727 P.2d 129; *Bryan v. Kitamura*, 529 F. Supp. 394 (D. Haw. 1982); *Hayward v. Ramick*, 248 Ga. 841, 285 S.E.2d 697 (1982); *Piscataway Tp. Bd. of Ed. v. Caffiero*, 86 N.J. 308, 431 A.2d 799 (1981), *appeal dismissed* 454 U.S. 1025, 102 S. Ct. 560, 70 L. Ed. 2d 470. The defendants, being the parties attacking the statute as violative of equal protection under article III, § 18, and the 14th amendment, have the burden of proving there is no rational basis for treating the parents of children causing personal injury differently from the parents of children causing property damage. *Otto v. Hahn*, 209 Neb. 114, 306 N.W.2d 587 (1981).

In analyzing the questions presented by this appeal, we must bear in mind that in every constitutional challenge there attaches the presumption that all acts of the Legislature are constitutional with all reasonable doubts resolved in favor of

constitutionality. *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989); *Otto v. Hahn, supra.*

We begin by noting that other courts considering the matter have generally concluded that parental liability statutes such as § 43-801 are rationally related to the legitimate governmental purposes of compensating victims and deterring juvenile delinquency. See, *Bryan v. Kitamura, supra; Alber v. Nolle*, 98 N.M. 100, 645 P.2d 456 (1982); *Hayward v. Ramick, supra; Piscataway Tp. Bd. of Ed. v. Caffiero, supra; Buie v. Longspaugh*, 598 S.W.2d 673 (Tex. Civ. App. 1980); *Vanthournout v. Burge*, 69 Ill. App. 3d 193, 387 N.E.2d 341 (1979); *Watson v. Gradzik*, 34 Conn. Supp. 7, 373 A.2d 191 (1977); *Rudnay v. Corbett*, 53 Ohio App. 2d 311, 374 N.E.2d 171 (1977); *Matter of Sorrell*, 20 Md. App. 179, 315 A.2d 110 (1974); *Mahaney v. Hunter Enterprises, Inc.*, 426 P.2d 442 (Wyo. 1967); *Kelly v. Williams*, 346 S.W.2d 434 (Tex. Civ. App. 1961).

In treating defendants' equal protection concern, we are reminded that a class need not be all-inclusive. " 'Legislation is to a large extent an evolutionary process, and legislatures often work by piecemeal. Not infrequently they approach a new subject of legislation in a timid and halting spirit, and it often takes years and many sessions to frame legislation covering a whole subject.' " *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 318, 238 N.W.2d 443, 450 (1976). When the Legislature seeks to inaugurate reforms in the area of economics or social welfare, it need not choose between attacking every aspect of the problem or not attacking the problem at all, as long as the action has a rational basis and is free from invidious discrimination. *Otto v. Hahn, supra.*

In very few cases from other states is there a complaint that parental liability statutes violate equal protection by creating discriminatory classifications. One such case is *Piscataway Tp. Bd. of Ed. v. Caffiero, supra*, in which it was claimed that a statute which imposed vicarious liability on the parents or guardians of pupils damaging school property treated such persons having public school children differently from those having nonpublic school children, and thus offended equal protection notions. However, the *Caffiero* court found a

rational relation between the statute and the legitimate government objective of maintaining discipline.

The fact that the Legislature did not at the same time address the problem of deterring delinquent behavior by nonpublic school children or the problem of compensating school districts for all acts of vandalism does not deprive the statute of its rational basis. A state may undertake resolution of problems one step at a time, addressing itself to the part of the problem that seems most acute.

*Id.* at 324, 431 A.2d at 807.

Similarly, in *Bryan v. Kitamura, supra,* it was argued that the Hawaii parental liability statute denied equal protection because it failed to impose liability on persons other than natural parents who are as responsible for a child's conduct as are natural parents. That court held, however, that the distinction drawn between natural parents and others responsible for the child's behavior is rationally related to the legitimate governmental ends of compensating victims and deterring juvenile delinquency, and said, "It is within the discretion of the legislature to address only part of a problem or to select only one phase of a field for regulation." 529 F. Supp. at 402. See, also, *Vanthournout v. Burge, supra* (wherein the court rejected the argument that the Illinois parental liability act created an unreasonable classification by imposing liability on parents and guardians of minor children but not on schools, police, and others also responsible for a child's conduct).

However, no case has been found which considers the precise question before us: Does a rational basis exist for limiting parental liability where children intentionally cause personal injury but not limiting such liability where children intentionally cause property damage?

We do not agree with plaintiff's suggestion that *Otto v. Hahn,* 209 Neb. 114, 306 N.W.2d 587 (1981), and *Romero v. Hodgson,* 319 F. Supp. 1201 (N.D. Cal. 1970), *aff'd* 403 U.S. 901, 91 S. Ct. 2215, 29 L. Ed. 2d 678 (1971), to which *Otto* refers, stand for the proposition that necessary political compromise in and of itself provides a rational basis for legislative classification. None of the U.S. Supreme Court cases

cited in *Romero* so hold. Indeed, the very purpose of equal protection concepts is to shield hapless citizens from the enactment and enforcement of laws based on political accommodations which, with no reasonable basis, would treat one group differently from another similarly situated group. While it is true that the *Romero* court wrote of necessary political compromises, the fact of the matter is that the then prevailing economic realities provided a rational basis for excluding agricultural labor from unemployment compensation benefits, just as in *Otto* economic considerations provided a rational basis for denying workers' compensation benefits to farm laborers. However, as plaintiff points out, in determining whether a rational basis exists for a legislative classification, courts look to see if any state of facts can be conceived to reasonably justify the disparate treatment which results. *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984).

The debate during the Nebraska Legislature's Judiciary Committee's consideration of the bill which expanded the purview of the earlier parental liability statute so as to include intentionally inflicted personal injury reveals that one of the concerns was the fact that, unlike the situation in property damages, personal injury, if not limited, could expose a parent to liability for subjective pain and suffering. The object of the bill, according to the introducer, was simply to compensate one sustaining personal injury for the actual bills attendant to the injury. Judiciary Committee Hearing, L.B. 49, 80th Leg. (Jan. 28, 1969). The floor debate, again, suggests concern that, on average, unlimited liability would present a greater potential for high damages in instances of personal injury than in instances of objectively measured property damage. Floor Debate, L.B. 49, Judiciary Committee, 80th Leg. (Feb. 26, 1969).

That certain limitations on recovery and differentiation among types of tort-feasors are permissible is demonstrated by *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977). The legislation involved therein, the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. §§ 44-2801 et seq. (Cum. Supp. 1976), then limited the damages recoverable

by victims of medical malpractice failing to remove themselves from the ambit of the act to $500,000. In rejecting the claim that such limitation violated state and federal equal protection requirements, this court determined that the Legislature could reasonably distinguish health care providers from other tort-feasors on the basis that the growth in medical malpractice actions was producing exorbitant medical care costs.

Some courts have held that where parental liability statutes limit liability, the statutory purpose must be only to deter juvenile delinquency, not to compensate victims. See, *First Bank Southeast v. Bentkowski*, 138 Wis. 2d 283, 405 N.W.2d 764 (1987); *Stang v. Waller*, 415 So. 2d 123 (Fla. App. 1982); *Standard v. Shine*, 278 S.C. 337, 295 S.E.2d 786 (1982); *Insurance Co. v. Faulkner*, 259 N.C. 317, 130 S.E.2d 645 (1963). However, the legislative history establishes that § 43-801 is related both to the legitimate governmental purposes of compensating, in whole or in part, victims who suffer damage at the hands of juvenile delinquents, and to the legitimate governmental purpose of deterring juvenile delinquency through encouraging parents to control their children. Further, the differences between the elements of damages for personal injury and those for injury to property provide a rational economic basis upon which to limit the liability of parents whose children intentionally injure persons but not limit the liability of parents whose children intentionally injure property. In addition, the Legislature could reasonably have concluded that minor children intentionally injure property more frequently than they intentionally injure persons, and thus desired to place greater deterrence on the infliction of property damage. Accordingly, the defendants have failed to meet their burden of proving that no rational basis exists for the classification made by the Legislature. We therefore hold that § 43-801 does not violate either the prohibition against special legislation contained in Neb. Const. art. III, § 18, or the equal protection clause of U.S. Const. amend. XIV on the ground that the liability of parents of children who intentionally inflict personal injury is limited and the liability of parents whose children intentionally inflict property damage is not.

## DUE PROCESS

The next question is whether § 43-801 runs afoul of either the guarantee contained in Neb. Const. art. I, § 3, that no person shall be deprived of property "without due process of law," or the like guarantee embodied in U.S. Const. amend. XIV.

So far as we have been able to determine, only in *Corley v. Lewless*, 227 Ga. 745, 182 S.E.2d 766 (1971), has a parental liability statute been declared invalid on due process grounds. The Georgia statute provided unlimited parental liability for the willful and wanton acts of their minor children resulting in the death, injury, or damage to the person or property of another. The court found that unlike other statutes which provided penalties to curb juvenile delinquency, the Georgia statute, because it imposed unlimited liability, sought instead to provide compensation in full for property damage or personal injury. Relying on earlier decisions that faultless liability deprived one of due process, the *Corley* court held the statute unconstitutional, as it imposed liability without personal fault solely on the basis of the parent-child relationship. Notwithstanding that rationale, the Georgia Supreme Court, in *Haywood v. Ramick*, 248 Ga. 841, 285 S.E.2d 697 (1982), upheld a subsequently enacted similar statute which limited parental liability to $500. The *Ramick* court did not undertake to explain how limiting liability overcame the due process infirmity it had earlier found to exist in vicarious liability, but did observe that *Corley* stood alone in holding parental liability statutes unconstitutional.

We have upheld the imposition of vicarious liability against a due process challenge in *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 238 N.W.2d 443 (1976). There, we determined that whether vicarious liability could be imposed depended on whether the statute represented a proper exercise of the police power of the state.

> Statutes which are reasonably designed to protect the public safety, health, morals, and general welfare do not violate the Constitution where the statute operates uniformly on all within a class which is reasonable....
>
> ....
>
> The imposition of strict liability, in the exercise of the

police power of a state, does not of itself contravene the due process clauses of the federal [and] state Constitutions. . . . Legislation imposing liability without fault is frequently sustained as a proper exercise of the police power. . . . The extent to which the Legislature may exercise the police power, an attribute of state sovereignty, is primarily a matter of legislative judgment, but the purpose of the regulatory matter must be ligitimate [sic] and the means employed to effect it must be reasonable. . . . Nebraska has, both by legislation and court decision, approved the principles of strict liability and vicarious liability in its workmen's compensation statutes, judicial application of the family purpose doctrine, and defective products cases.

(Citations omitted.) *Id.* at 312-14, 238 N.W.2d at 447-48. We then held that Neb. Rev. Stat. § 39-6,193 (Reissue 1974), a statute imposing unlimited vicarious liability on owners-lessors of trucks for the damages negligently caused by the lessees and operators of the trucks, was a reasonable means to the legitimate state ends of increasing highway safety, compensating victims, and encouraging adequate insurance coverage, and, thus, the statute did not deprive truck owners-lessors of their property without due process of law.

In like fashion, imposing total or partial liability on parents whose children intentionally inflict personal injury or damage to property is, as we said in considering defendants' equal protection concerns, a reasonable means to the legitimate state ends of controlling juvenile delinquency and compensating, in whole or in part, the victims of such delinquency. Accordingly, § 43-801 violates neither the due process clause contained in Neb. Const. art. I, § 3, nor that contained in U.S. Const. amend. XIV on the ground that it imposes vicarious liability.

We also note that at least two other jurisdictions have specifically held that the imposition of vicarious liability on parents for the acts of their children does not deprive the parents of due process. *Piscataway Tp. Bd. of Ed. v. Caffiero*, 86 N.J. 308, 431 A.2d 799 (1981), *appeal dismissed* 454 U.S. 1025, 102 S. Ct. 560, 70 L. Ed. 2d 470; *Bryan v. Kitamura*, 529 F. Supp. 394 (D. Haw. 1982).

## NEITHER FINE NOR PENALTY

This brings us to the additional concerns we directed the parties to address. U.S. Const. amend. VIII and Neb. Const. art. I, § 9, prohibit the imposition of excessive fines. Neb. Const. art. VII, § 5, further provides that, with certain exceptions not relevant to the present inquiry, all fines and penalties shall be appropriated exclusively to the common schools of the political subdivisions in which they accrue. Obviously, the foregoing constitutional provisions can have application to § 43-801 only if the statute in question imposes a fine or penalty upon the defendants.

This court observed in *Abel v. Conover*, 170 Neb. 926, 929-30, 104 N.W.2d 684, 688 (1960), that in Nebraska "the measure of recovery in all civil cases is compensation for the injury sustained. . . . A statute which imposes liability for actual damages and additional liability for the same act provides a penalty." Implicit in this holding is the notion that a statute which imposes liability only for actual damages exacts no penalty. Liability under the statute being limited to actual damages or less, it is clear that § 43-801 imposes no penalty upon parents. See *DeCamp v. City of Lincoln*, 202 Neb. 727, 277 N.W.2d 83 (1979), which holds that court costs collected by a city violations bureau for parking violations for the apparent purpose of defraying the expenses of operating the bureau are neither fines nor penalties. Compare, however, *School District of McCook v. City of McCook*, 163 Neb. 817, 81 N.W.2d 224 (1957), which holds that sums paid to purge oneself from the charge of violating the overparking provisions of an ordinance constituted penalties. A fine is " '[a] certain payment of money imposed as punishment for an offense.' 'The term "fine" has a distinct meaning; it is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor.' " *Sinner v. State*, 128 Neb. 759, 762, 260 N.W. 275, 276 (1935). Section 43-801 imposes no fine for at least two reasons: pecuniary impositions measured by actual damages sustained are compensatory in nature and not properly characterized as punishment, although certainly such impositions may be experienced as punishing by those upon whom they are levied. See *Trop v. Dulles*, 356 U.S. 86, 96, 78 S.

Ct. 590, 2 L. Ed. 2d 630 (1958) ("The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature"). See, also, *School District of the City of Omaha v. Adams*, 147 Neb. 1060, 26 N.W.2d 24 (1947), which concludes that statutes granting a private action against a wrongdoer are not penal. Section 43-801 addresses the civil liability of parents for the intentional torts of certain of their children; it does not undertake to make parents criminally culpable for the harm done. Thus, the statute imposes neither fine nor penalty.

## NOT PUNITIVE DAMAGES

Although we are aware the U.S. Supreme Court recently held, in *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 57 U.S.L.W. 4985 (U.S. June 26, 1989) (No. 88-556), that the eighth amendment prohibition against excessive fines does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded and thus does not prohibit punitive damages per se, the fact remains that punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction. *Miller v. Kingsley*, 194 Neb. 123, 230 N.W.2d 472 (1975); *Abel v. Conover, supra*. Thus, although § 43-801 imposes neither a penalty nor fine, it may yet run afoul of Nebraska law.

Punitive damages "are given to the plaintiff over and above the full compensation for the injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example." Prosser and Keeton on the Law of Torts, *Introduction* § 2 at 9 (5th ed. 1984).

Although in *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 108 S. Ct. 1645, 100 L. Ed. 2d 62 (1988), the U.S. Supreme Court did not reach the question of whether the size of the $1.6 million punitive damages award for an insurer's bad-faith refusal to pay a claim itself violated the due process,

contract, and excessive fines clauses of the federal Constitution, the Court held that a Mississippi statute imposing a 15-percent penalty upon an unsuccessful appellant from a money judgment was reasonably tailored to achieve the state's legitimate objectives of discouraging frivolous appeals, compensating appellees for the intangible costs of litigation, and conserving judicial resources, and thus did not violate the equal protection clause notwithstanding that unsuccessful appellants from nonmonetary judgments were not subject to the penalty. In their joint *Crenshaw* concurrence, Justices O'Connor and Scalia observe: "Punitive damages are not measured against actual injury, so there is no objective standard that limits their amount." 108 S. Ct. at 1655. According to those justices, it is the "grant of wholly standardless discretion to determine the severity of punishment [inherent in the notion of punitive damages which] appears inconsistent with due process." 108 S. Ct. at 1656. The damages for which parents may be held accountable under § 43-801 are "measured against," in fact are limited by, the "actual injury" caused by their errant children. Thus, § 43-801 may not fairly be characterized as imposing punitive damages.

## PREROGATIVE OF LEGISLATURE

While some may question the wisdom of imposing generally uninsurable liability upon the parents of errant children rather than leaving the risk of insurable loss upon those who experience property damage or personal injury at the hands of such children, the fact remains that in a representative democracy such as exists in this state, the wisdom, justice, policy, or expediency of a statute is for the Legislature alone. *Arant v. G. H., Inc.*, 229 Neb. 729, 428 N.W.2d 631 (1988); *Else v. Else*, 219 Neb. 878, 367 N.W.2d 701 (1985); *Williams v. County of Buffalo*, 181 Neb. 233, 147 N.W.2d 776 (1967).

The judgment of the district court, being erroneous, is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

GRANT, J., dissenting.

I dissent. I feel that Neb. Rev. Stat. § 43-801 (Reissue 1988) is

unconstitutional and that its predecessor statute, § 43-801 (Reissue 1952), was unconstitutional, because both constitute special legislation denying equal protection of the law in violation of article III, § 18, of the Nebraska Constitution and the 14th amendment, § 1, to the U.S. Constitution and because the current statute violates the due process clause set out in article I, § 3, of the Nebraska Constitution and in the 14th amendment, § 1, to the U.S. Constitution.

In my judgment, a rational basis for differentiating parents of children who cause property damage from parents of children who cause personal injury damage does not exist. It does not seem rational to me that the State of Nebraska is perfectly willing to drive a family into bankruptcy (most families could not stand a $178,000 judgment such as sought in this case) if a minor child willfully damages property, but chooses to limit possible frightful damages caused by the same willful child by way of personal injury. Can it make sense to value a burned-up warehouse more highly in the overall scheme of things than the eyesight of a child lost through the malicious actions of another child? That such parental statutes do result in bankruptcy filings is shown in many cases. In bankruptcy cases, it appears that the owners of judgments against parents often seek to inflict additional punishment by contending the judgments are not dischargeable because they represent intentional torts. See, *In re Whitacre*, 93 Bankr. 584 (Bankr. N.D. Ohio 1988); *In re Eggers*, 51 Bankr. 452 (Bankr. E.D. Tenn. 1985); *In re Horne*, 46 Bankr. 814 (Bankr. N.D. Ga. 1985); *In re Cornell*, 42 Bankr. 860 (Bankr. E.D. Wash. 1984); *In re Austin*, 36 Bankr. 306 (Bankr. M.D. Tenn. 1984). Appellees herein may take some comfort in the fact that it appears that debts resulting from vicarious liability for intentional or negligent acts of children appear generally to be dischargeable in bankruptcy.

In reaching the foregoing conclusion, I do not contest the obviously correct holding in *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960), also in the majority opinion. What I disagree with is the majority's concept that § 43-801 (Reissue 1988) imposes no penalty on parents since it "imposes liability only for actual damages." Whether they are actual or not, if the

damages are imposed on parents *only* because of the acts of their children, the imposition operates as a penalty on the parents for the actions of another, their child.

I do not believe a rational basis exists for such a differentiation, and I believe § 43-801 is unconstitutional as constituting proscribed special legislation under the Nebraska Constitution and in not affording equal protection under the U.S. Constitution.

I also believe that § 43-801 violates the due process clauses of the Nebraska and U.S. Constitutions, because the statute imposes unlimited vicarious liability, without fault, on certain parents. I do not believe § 43-801 can be considered by this court in the way that courts of other states have considered parental liability statutes in their states, because our statute differs materially from other statutes. In Maryland, New Mexico, Texas, Illinois, Connecticut, Ohio, Georgia, and Wyoming, there are statutory limits to the amount for which the parent may be liable. Those limits range from $300 to $15,000, but the mere fact there is a limit differentiates those states from Nebraska, where the property damage liability is unlimited. In New Jersey, a parent is liable if the parent "fails or neglects to exercise reasonable supervision and control" of the conduct of a minor child—a negligence basis. N.J. Stat. Ann. § 2A:53A-15 (West 1987).

I do not believe the court's analysis of the case of *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 238 N.W.2d 443 (1976), and Neb. Rev. Stat. § 39-6,193 (Reissue 1974) is helpful in this case. Both the case and the statute concern business relationships not present in this case.

If the Nebraska statute imposed liability for a parent's actions, not for the mere status as parents, or had a reasonable limit on the amounts which a parent might have to pay for damages intentionally caused by his or her child (as most of the states provide), I would not make this contention. Such a statute might reflect the valid considerations this state has in encouraging parents to teach their children respect for the law and the property of others. I think it an entirely different situation when the statute operates to take all the assets of a family (up to $178,000 in this case) for the derelictions of one

member of the family, without providing any process where parents can adequately defend such a taking, in a situation where the parents probably cannot obtain protective insurance and thus possibly protect the interest of the family unit in surviving.

I also believe that provisions of the U.S. and Nebraska Constitutions forbidding excessive fines also require the court to determine that § 43-801 is unconstitutional. I note the consideration expressly given in many states to the fact that limited recovery of amounts from parents should be in the nature of penalties to enforce compliance with the law rather than in the nature of compensation to the injured parties. The majority opinion states that § 43-801 is related "to the legitimate state ends of controlling juvenile delinquency . . . ." As soon as that approach is adopted, it is clear the state is imposing a penalty on persons in a certain status, i.e., being parents of children who intentionally damage property, in order to control the behavior of such parents. As stated in *Trop v. Dulles*, 356 U.S. 86, 96, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958), "If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc.—it has been considered penal."

Such a penalty is in the nature of a fine. The eighth amendment to the U.S. Constitution, and article I, § 9, of the Nebraska Constitution expressly provide that excessive fines may not be imposed. The "fine" sought to be levied on appellees in this case is $178,000. In my judgment, that amount constitutes an excessive, unconstitutional fine and is, therefore, invalid.

I recognize that in *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977), the U.S. Supreme Court held that the "cruel and unusual punishments" clause of the eighth amendment applies only to criminal cases. I not only agree completely with the four-judge dissent in the *Ingraham* case, but I point out that in the case before this court, we are dealing with the "excessive fines" clause of the eighth amendment—a different clause. Even if that conclusion is not correct, I see nothing to prevent the application of the "excessive fines" clause of article I, § 9, of the Nebraska Constitution in the case

862

before us. See *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 365 S.E.2d 827 (1988).
I would affirm.