ALICE MARIE DRENNEN, APPELLANT, V. MICHAEL HARVY
DRENNEN, APPELLEE.
IN RE INTEREST OF T.L.H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT, V. DENNIS LEE HUTSELL,
APPELLEE.

426 N.W.2d 252

Filed July 15, 1988.   Nos. 87-363, 87-730.

Robert M. Spire, Attorney General, and Royce N. Harper,
and Ronald E. Bucher, Deputy Lancaster County Attorney, for
appellant Drennen.

Dennis R. Keefe, Lancaster County Public Defender, for
appellee Drennen.

Michael G. Heavican, Lancaster County Attorney, and
Ronald E. Bucher, Deputy Lancaster County Attorney, for
appellant State.

James M. Kelley for appellee Hutsell.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.,
and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

GRANT, J.
These two cases, *Drennen v. Drennen* and *In re Interest of
T.L.H., State v. Hutsell*, both on appeal from the district court

for Lancaster County, have been consolidated for hearing in this court. In the *Drennen* case, a decree of dissolution of that marriage was rendered on January 16, 1986. Included in that decree was an order requiring Michael Harvy Drennen, respondent husband and appellee in No. 87-363, to pay $100 per month child support for each of two children. On October 2, 1986, pursuant to Neb. Rev. Stat. § 42-358(1) (Cum. Supp. 1986), the district court, on its own motion, appointed the Lancaster County attorney to commence and prosecute contempt of court proceedings against Drennen for his failure to pay child support pursuant to the decree of dissolution. The district court order directed that appellee should appear before the "Honorable Jan Dutton, District Court Referee . . . and bring with him his income tax returns for the past 3 years and his last 3 wage statements prior to hearing." This order was served on appellee Drennen.

The "District Court Referee" had been appointed pursuant to the provisions of Neb. Rev. Stat. §§ 43-1601 to 43-1607 (Cum. Supp. 1986), hereinafter referred to as the Referee Act.

Appellee Drennen appeared before the referee on October 27, 1986, in response to the district court order. At that time he completed and filed a poverty affidavit and requested that an attorney be appointed to represent him. The referee told Drennen that she would "recommend the public defender be appointed to represent you." On October 28, a district court judge appointed the Lancaster County public defender to represent appellee. On December 3, Drennen appeared before the referee, with appointed counsel, and a hearing was held. After preliminary questions as to his residence, the deputy county attorney asked Drennen, "And are you the father of—?" At that point, Drennen's counsel instructed Drennen not to answer any more questions and to "claim Fifth Amendment grounds." The county attorney stated, "I'd offer this witness immunity in accordance with Chapter 42." The referee then stated, "Immunity will be granted to the witness." Further questioning then followed. At the conclusion of this hearing, the referee stated on the record:

> Very well, the Court makes the following findings. First of all, that the Court does have jurisdiction over the parties

and the subject matter . . . .

. . . .

Accordingly, it is the finding of the Court that the respondent has willfully and contumaciously failed to comply with the Court's judgment and order to pay child support herein; that the respondent is hereby found to be in willful and contumacious contempt of court.

The referee then asked if Drennen had any plan to "purge himself of said contempt of court." Drennen or his counsel did not offer any plan. The referee then stated, "Very well, Mr. Drennen, it has been the court finding, order and judgment that you are and have been found to be in willful contempt of court." The referee then ordered Drennen to appear before the district court judge "for sentencing and/or final disposition on this matter on January 8th, 198[7] . . . ." The referee signed an order on December 3, 1986, setting out the above findings.

On December 10, 1986, in the district court, Drennen filed a "Petition for Review and Motion to Dismiss," requesting the court to determine that §§ 43-1601 et seq. were unconstitutional, and to dismiss the order to show cause issued by the referee requiring Drennen to show to the referee reasons why he (Drennen) should not be held in contempt for not complying with the district court's support order.

A hearing was held on Drennen's pleading on December 23, 1986, in the district court. At this hearing, the deputy Lancaster County attorney appeared "as counsel for the State" representing Alice Marie Drennen, petitioner wife in the marriage dissolution case, and appellant herein. A representative of the Attorney General also appeared and acknowledged he had been notified of the case and the fact that constitutional issues were raised.

The parties stipulated as to the statutes in question, various federal regulations concerning child support, the Nebraska Supreme Court Child Support Rules, and the proceedings before the referee as set out above. No further evidence was adduced. On March 23, 1987, the district court rendered its order sustaining Drennen's petition for review and motion to dismiss, making various findings, and determining §§ 43-1601 et seq.

unconstitutional to the extent set out in the findings provided that nothing in this order shall prevent the child support referee from hearing child support cases assigned to the referee by a District Judge, making proposed findings of fact and recommendations to a District Judge as to how the case should be decided.

The district court concluded that the referee's order was without subject matter jurisdiction and that the Referee Act was unconstitutional as violating Neb. Const. art. II, § 1, and art. V, §§ 1 and 21.

Alice Marie Drennen has appealed, represented by the Lancaster County attorney and the Attorney General. On appeal, she assigns as error that the district court erred "in finding the child support referees were given full judicial powers and are therefore, unconstitutional as violating Article V, Sections 1 and 21 of the Nebraska Constitution"; that the court erred "in finding the contempt power is exclusively a judicial power"; that the court erred "in finding the Child Support Referee Act violates the separation of powers clause" found in Neb. Const. art. II, § 1; and that the court erred "in finding there is no rational basis for the disparity between treatment of IV-D and non IV-D cases."

Case No. 87-730 is the State of Nebraska, on behalf of a named minor child, v. Dennis Lee Hutsell, the adoptive father of the minor child. The record in that case shows that on June 24, 1985, defendant-appellee, Dennis Hutsell, was ordered by the district court, in a temporary consent support order, to pay $50 per month for the support of the minor child, who was a ward in the custody of the Nebraska Department of Social Services. The initial pleadings in this case are not in the record, but it was apparently filed by the State in an effort to require Dennis Hutsell to provide support for his adopted child, who had been made a ward of the State. On July 24, 1986, the Lancaster County attorney filed a motion requesting the district court "to review the Defendant's ability to increase child support payments . . . ." On the same day, a notice of hearing was filed setting the motion "for hearing before the Honorable Jan Dutton . . . ."

A hearing was held on August 6, 1986, before the referee.

Hutsell appeared pro se. By "Referee's Findings and Order" filed August 6, the referee found that defendant "has equity in real estate of approximately $30,000.00 and a vehicle with equity of $2,500.00," and that "[r]espondent's child support be established on a permanent basis of $100.00 per month continuing under the provisions of the June 24, 1985 support order."

On August 11, 1986, an order was entered, stating, in part,

Evidence was submitted, and in consideration thereof, and upon the recommendation of the District Court Referee, the Court FINDS, ORDERS, ADJUDGES, AND DECREES:

1. The Court has jurisdiction over the defendant and the subject matter.

2. There has been a material change of circumstances since the entry of the Temporary Support Order on June 25, 1985.

3. The child support obligation shall be increased to $100 per month commencing September 1, 1986, and continuing thereafter until the child reaches age nineteen, marries, dies, becomes self-supporting, joins the Service, or until further order of the Court.

. . . .

7. . . . . [T]hat failure to comply with the provisions of this section be punishable by contempt.

This order was signed by the district court referee.

On March 13, 1987, in the same case, in the district court, Hutsell, as defendant and third-party plaintiff, filed an "Application for Declaratory Judgement, Application for Modification of Order," and for other relief. In this pleading, appellee Hutsell pled that §§ 43-1601 et seq. were unconstitutional in that they violate Neb. Const. art. V, § 21; Neb. Const. art. II, § 1; and U.S. Const. amend. XIV. Hutsell's third-party action directed against his former wife, the adoptive mother of the minor child, was dismissed and is not a part of this appeal.

Plaintiff-appellant, State of Nebraska, answered appellee's application, alleging that the Referee Act was constitutional, that appellee had not utilized the review procedure of

§ 43-1605, and that the determination of the referee had become final.

Appellee Hutsell then filed a motion for summary judgment. On July 21, 1987, a judge of the district court granted appellee's motion and found that §§ 43-1601 et seq. were unconstitutional for the reasons set out in the district court case of *Drennen v. Drennen*, set out above. The district court in the *Hutsell* case found that Hutsell's application challenged the referee's order by collateral attack, rather than appeal, but that the referee's order was void for lack of subject matter jurisdiction and was therefore subject to collateral attack. In *Hutsell*, the appellant, in addition to the assignments of error found in *Drennen*, asserts an additional assignment of error, that the district court erred in finding that the referee's order was made without subject matter jurisdiction and was consequently void and subject to collateral attack. We affirm the judgment of the district court in each case for the reasons set out below.

Since the determinative factor in both cases is the constitutionality of §§ 43-1601 et seq., and that determination is a question of law, we consider the stipulations made by the parties in the two cases together where appropriate. The record before us shows that the Child Support Enforcement Program was established by the U.S. Congress under title IV-D of the Social Security Act. The stated purpose of the program is to establish paternity, locate absent parents, obtain child support orders, and enforce existing child support obligations. On August 16, 1984, the Congress adopted Pub. L. No. 98-378, 98 Stat. 1305 (1984), which provided that the act may be cited as the "Child Support Enforcement Amendments of 1984." The act is now codified in various sections of 42 U.S.C. §§ 651 through 675 (Supp. II 1984), insofar as this case is concerned. Regulations pursuant to the act were adopted by the Department of Health and Human Services, Office of Child Support Enforcement, and became effective May 9, 1985. Some of these regulations appear in 45 C.F.R. §§ 301, 302, 303, 304, 305, and 307 (1987). Section 303.101(b) requires that "[t]he State must have in effect and use expedited processes as specified under this section to establish and enforce support orders in intrastate and interstate cases." Section 303.101(a)

contains a definition of "expedited processes," defined as "administrative or expedited judicial processes or both which increases [sic] effectiveness and meet processing times . . . and under which the presiding officer is not a judge of the court." Section 303.101(c) provides that under the expedited process:

(1) Orders established must have the same force and effect under State law as orders established by full judicial process within the State

(2) The due process rights of the parties involved must be protected;

(3) The parties must be provided a copy of the order;

(4) There must be written procedures for ensuring the qualification of presiding officers;

(5) Recommendations of presiding officers may be ratified by a judge; and

(6) Action taken may be reviewed under the State's generally applicable judicial procedures.

The Nebraska Legislature passed 1985 Neb. Laws, L.B. 7, effective November 16, 1985, and 1986 Neb. Laws, L.B. 600, effective July 17, 1986, in response to U.S. Pub. L. No. 98-378 and its implementing regulations. These bills are now codified, in part, in §§ 43-1601 et seq. A summary of the Referee Act follows.

Section 43-1601 provides the procedure for the appointment of a child support referee, namely, that the referee is appointed by the district court "only when the Supreme Court finds that existing judicial resources, including available county judges, are insufficient to accommodate the case progression standards established by Public Law 98-378." The referee is subject to confirmation by the Supreme Court and may be removed by either the district court or the Supreme Court.

The duties and powers of the referee in regard to "any IV-D case" are specifically set out in § 43-1602. The phrase "IV-D" is not defined or otherwise explained in the Nebraska Referee Act. Examination of the legislative history of L.B. 7, other statutes in L.B. 7 (such as Neb. Rev. Stat. § 43-512.02(3)(a) (Cum. Supp. 1986)), and Pub. L. No. 98-378, referred to in § 43-1601, shows that the shorthand phrase means the law as set out in 42 U.S.C. chapter 7 ("Social Security"), subchapter

IV ("Grants to States for Aid and Services to Needy Families with Children and for Child-Welfare Services"), part IV-D ("Child Support and Establishment of Paternity"), at 858-84 of the 1982 main edition, and as amended and modified in 42 U.S.C. supp. III at 807-23 (1985). Section 43-1602 provides in part:

> For any IV-D case, the child support referee shall determine any matter pertaining to (1) the establishment, modification, enforcement, and collection of child support, (2) the enforcement and collection of spousal support if such support is part of an order which provides for child support and the child and spouse are living in the same household, (3) visitation, and (4) paternity.

The section further provides that the referee may order the issuance of process to compel the attendance of parties and witnesses, administer oaths, supervise pretrial preparation pursuant to the rules of discovery promulgated by the Supreme Court pursuant to Neb. Rev. Stat. § 25-1273.01 (Reissue 1985), grant adjournments, and exercise related powers in the same manner as a county or district court judge. Section 43-1603 provides:

> A trial before a child support referee shall be conducted in the same manner as a trial in the district court. A child support referee shall have authority to use all legal and equitable powers available to a district court judge, except that a child support referee shall not have authority to set bail and order detention in lieu of bail.
>
> In any judicial district where a child support referee is appointed who is not a county or district court judge, if incarceration is recommended for civil or criminal contempt of court, the child support referee shall refer the matter, together with a written recommendation, to the district court judge for final disposition.

Section 43-1604 provides that the "child support referee shall announce his or her decision orally or in writing to the parties . . ." and that the referee "shall transmit the written decision or a copy to the clerk of the district court . . . ."

Section 43-1605(1) provides in part that "[a] child support referee's decision may be reviewed by the district court" and

establishes a review procedure. The procedure requires that a petition for review shall be in writing, that the petition for review "shall set forth specifically the errors of law or fact alleged to have been committed by the child support referee," and that "[t]he review hearing shall be on the record made before the child support referee, supplemented in such fashion as the court may permit." Additionally, § 43-1605(2) provides:

> If the petition for review does not set forth the errors committed by the child support referee or is otherwise insufficient, it may be dismissed without a hearing or further review, and the decision of the child support referee shall become the judgment of the district court immediately upon entry of the order of dismissal, with the right of appeal reserved to all parties.

Section 43-1605(3) provides: "The filing of a petition for review shall not stay the decision of the child support referee unless specifically ordered by the district court."

Section 43-1605(4) provides:

> If no petition for review is filed within the fifteen-day period, the decision of the child support referee shall become the judgment of the district court, with the right of appeal reserved to all parties. If no appeal is taken, the judgment shall be entered upon the judgment record of the district court in the manner provided in section 25-2210.

Sections 43-1606 and 43-1607 provide for the funds and operating procedures for the Referee Act. Our examination of the Referee Act does not purport to determine whether that act complies with the guidelines set out by the U.S. Congress and the issued regulations. Our task is only to determine if the Referee Act, as enacted by the Nebraska Legislature, violates the Constitution of the State of Nebraska. There is no question before us of controlling and overriding federal law. We make no determination as to whether a statute can be enacted by the Nebraska Legislature that would comply both with the applicable federal law and the Nebraska Constitution. We are fully cognizant of the controlling effect of federal law over this State's legal actions, but in this case we need not determine the supremacy of the federal law on the subject. Apparently, in this

case, the "carrot" approach is used by the Congress rather than the "stick," because it appears that if the Nebraska Referee Act does not conform generally with the requirements set out in the federal regulations, Nebraska may lose certain federal funds to be made available to complying states. See 42 U.S.C. § 603(h) (Supp. III 1985). As stated, the question as to whether the Nebraska Referee Act complies with the federal law is not before this court, but only the question of the constitutionality of the Nebraska Referee Act under the Nebraska Constitution.

In that regard, the provisions of the Referee Act are set out above. After the hearing in the *Drennen* case, the district court found:

> 6. That insofar as The Referee Act attempts to permit a child support referee to exercise the legal and equitable powers of a District Court Judge and to exercise them in the same manner as a County or District Court Judge in finding a non paying child support payor in contempt of court The Referee Act violates Article II, Sec. 1, and Article V, Sections 1 and 21 of the Constitution of the State of Nebraska.

> 7. That insofar as The Referee Act purports to give the Referee the same powers as a District Judge to find the respondent or others in like circumstances in contempt of court, the Act violates Article II, Sec. 1, and Article V, Section 1 and 21 of the Constitution of the State of Nebraska.

In the *Hutsell* case, the district court, relying on the reasoning of the *Drennen* case in the district court, concluded that "the Referee Act is unconstitutional to the extent pertinent here" and that the referee's order was void.

Appellant in each case presents the view of the State of Nebraska; and the two appellants, in the respective cases, present the following common assignments of error: (1) The district court erred in finding the Nebraska Referee Act unconstitutional as violating Neb. Const. art. V, §§ 1 and 21 (*Drennen* assignment No. 1 and *Hutsell* assignment No. 2; the brief in *Drennen* particularizes this assignment by alleging in its second assignment of error that the district court also erred in that it found the contempt power is exclusively a judicial

power); (2) the district court erred in finding the Referee Act violates the separation of powers clause set out in Neb. Const. art. II, § 1 (*Drennen* and *Hutsell* assignment No. 3); and (3) the district court erred in finding that the Referee Act violated "the equal protection clauses of the Nebraska and Federal constitution" (*Hutsell* assignment No. 4) or in finding "there is no rational basis for the disparity between treatment of IV-D and non IV-D cases" (*Drennen* assignment No. 4). Insofar as *Hutsell* assigns as error a violation of a Nebraska equal protection clause, we assume reference is made to Neb. Const. art. I, § 13, referred to in the *Drennen* district court order, or to Neb. Const. art. III, § 18, since Nebraska has no equal protection provision, as such, in its Constitution. See *Porter v. Jensen*, 223 Neb. 438, 390 N.W.2d 511 (1986).

In the *Hutsell* case, the State also assigns as error the trial court's finding that the referee's order in that case was made without subject matter jurisdiction and was therefore subject to collateral attack.

We determine that none of the assigned errors have merit; that the Referee Act is unconstitutional for the reasons hereinafter stated; and that the decision of the trial court in each case should be affirmed.

We first consider the first two joint assignments, as set out above. The issue in connection with these assignments is set out at 7 in the appellant Drennen's brief, as follows: "The issue then in this case is whether the Nebraska Legislature has granted full judicial power to the child support referee . . . ." Appellant Drennen admits that if the Referee Act has granted such power, then the statutes in question would violate Neb. Const. art. V, §§ 1 and 21.

Appellee Drennen states, at 10 of his brief, that the issue is, "Does The Referee Act grant judicial powers to the child support referee? If so, the Act is unconstitutional. But if the Referee Act only vests quasi-judicial powers in an adjunct of the district court, as the appellant argues, then the Act is constitutional."

Neb. Const. art. V, § 1, provides in part:

> The judicial power of the state shall be vested in a Supreme Court, district courts, county courts, in and for

each county, with one or more judges for each county, or with one judge for two or more counties, as the Legislature shall provide, and such other courts inferior to the Supreme Court as may be created by law.

The quoted part of the Nebraska Constitution authorizes the creation of *courts*, not judgeships. The Nebraska Constitution clearly provides that the Legislature has the power to specify the number and duties of judges in a newly created court, so long as that court is lower in order to the Supreme Court. In Neb. Const. art. V, § 11, the Constitution specifically provides that the Legislature "may change the number of judges of the district courts . . . ." It is also clear that the duties and powers of a judge in a newly created court may not usurp the powers granted to constitutionally created courts.

Neb. Const. art. V, § 9, provides: "The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide; and the judges thereof may admit persons charged with felony to a plea of guilty and pass such sentence as may be prescribed by law." This article grants original, but not exclusive, jurisdiction in equity matters to the district court. *In re Estate of Kentopp. Kentopp v. Kentopp*, 206 Neb. 776, 295 N.W.2d 275 (1980).

We have held that district courts have constitutional equity jurisdiction which may be exercised without legislative enactment, *Matteson v. Creighton University*, 105 Neb. 219, 179 N.W. 1009 (1920), and, further, that the equity jurisdiction conferred on the district courts by this section of the Constitution is *beyond* the power of the Legislature to control, *Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.*, 208 Neb. 110, 302 N.W.2d 379 (1981). Jurisdiction over divorces, including child support orders, is within the chancery and equity powers of the district court. *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939).

Section 43-1602 states in part:

For any IV-D case, the child support referee *shall* determine any matter pertaining to (1) the establishment, modification, enforcement, and collection of child support, (2) the enforcement and collection of spousal support if such support is part of an order which provides

for child support and the child and spouse are living in the same household, (3) visitation, and (4) paternity. (Emphasis supplied.)

The plain meaning of that language is that the district court is deprived of original jurisdiction in each of the designated areas. The Legislature may not limit the constitutionally granted original jurisdiction of the district court. This portion of the act is clearly unconstitutional as violative of Neb. Const. art. V, § 9.

The grant of exclusive and original jurisdiction to the referee denies the persons chargeable with potential or delinquent child support obligations access to the district court as an original trier of fact. The U.S. Supreme Court has noted:

[C]onstitutional requirements for the exercise of the judicial power must be met at all stages of adjudication, and not only on appeal, where the court is restricted to considerations of law, as well as the nature of the case as it has been shaped at the trial level.

*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 86 n.39, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). This purported grant of judicial power in § 43-1602 violates Neb. Const. art. I, § 13, which provides, "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay." Neb. Const. art. I, § 3, provides, "No person shall be deprived of life, liberty, or property, without due process of law."

We hold that the Referee Act violates Neb. Const. art. I, § 13, and art. V, §§ 1 and 9, and is, therefore, void.

Such a determination, in itself, would require affirming the district court orders in each of the cases under review. Nonetheless, we feel it is appropriate to discuss the other error assigned by each appellant in the orders of the district court. The *Drennen* district court held, and the *Hutsell* district court agreed, that the Referee Act was also unconstitutional in that it denied equal protection of the law in arbitrarily denying child support payors in a "IV-D" case the same access to the courts as other child support payors. While Nebraska's Constitution has no specific equal protection clause which is the same as U.S.

Const. amend. XIV, Neb. Const. art. I, § 13, provides, in part, that "[a]ll courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law," and art. III, § 18, provides, "The Legislature shall not pass local or special laws in any of the following cases, that is to say: For granting divorces. . . . Regulating the practice of Courts of Justice. . . . In all other cases where a general law can be made applicable, no special law shall be enacted." Appellees contend that the Referee Act violated the Nebraska Constitution by directing child support referees to hear "IV-D cases," while all non-"IV-D cases" would be heard by a district court judge.

Both appellants contend that there is no constitutional violation because there is a rational basis for treating IV-D cases differently than non-IV-D cases. We do not agree. It is first necessary to define the term "IV-D case." For the purposes of this opinion, we define a "IV-D case," as the phrase is used in § 43-1602, as a case involving a dependent child as defined in Neb. Rev. Stat. § 43-504 (Reissue 1984), that is, a child who is receiving, or is eligible for, aid from the State. The State, in turn, is getting some reimbursement from the federal government.

It is this type of case that the referee procedures of §§ 43-1601 et seq. are specifically designed for. The question controlling this point, as stated in appellant Drennen's brief at 22, is: Is there "a rational basis for the disparity in treatment" between IV-D cases and non-IV-D cases?

"The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences of situation and circumstances surrounding the members of the class relative to the subject of legislation which render appropriate its enactment."

*Taylor v. Karrer*, 196 Neb. 581, 585, 244 N.W.2d 201, 204 (1976), quoting from *State ex rel. Rogers v. Swanson*, 192 Neb. 125, 219 N.W.2d 726 (1974).

The effect of the Nebraska Referee Act is to provide an expedited form to effect repayment to the State for assistance

given to certain children. That effort does not in any way assist children who need assistance but who are not receiving state or federal aid. The classification is not reasonable. It is no answer to say that the same services are available to non-IV-D cases on payment of a fee (however small). In that case, a custodial parent, not receiving AFDC, must pay additional money to receive a service available automatically to those receiving AFDC. The other side of the same situation affects the noncustodial parent in that the custodial parent may, by paying or not paying a set fee, determine whether a hearing is held before a district judge or a nonjudge referee. We hold the classification is not reasonable, and the Referee Act is unconstitutional as violating the equal protection clause of the U.S. Constitution and Neb. Const. art. I, § 13, and art. III, § 18.

In the *Hutsell* case, appellant raises the additional question of appellee's right to challenge the Referee Act by collateral attack. As examination of the facts set out above shows, on August 11, 1986, appellee Hutsell was ordered by the referee to make the increased support payments commencing September 1, 1986. No order or judgment was signed by a district judge. In the same docket, on March 13, 1987, appellee Hutsell filed an application for declaratory judgment, seeking an order of the district court holding the Referee Act unconstitutional. Hutsell contended the referee appointed under the Referee Act "lacked personal jurisdiction over Dennis Lee Hutsell and subject matter jurisdiction over the matters at issue."

The district court in the *Hutsell* case recognized that Hutsell challenged the referee's order by collateral attack rather than by appeal. The trial court held that since the Referee Act was unconstitutional, the judgment under the act against Hutsell was void. We agree. The judgment against Hutsell was rendered and signed by the referee, not a judge. In that event, the judgment was void. We have held, "[A] void judgment may be attacked at any time in any proceeding." *Lammers Land & Cattle Co. v. Hans*, 213 Neb. 243, 249, 328 N.W.2d 759, 763-64 (1983). The judgment against Hutsell could be attacked collaterally.

Neither appellant has the standing to raise a further issue

which we feel should be mentioned. We note that § 43-1602 provides, "For any IV-D case, the child support referee *shall determine* any matter pertaining to . . . (4) paternity." (Emphasis supplied.) Such grant of judicial authority is in direct conflict with 1985 Neb. Laws, L.B. 7, § 74, the same legislative bill containing the Nebraska Referee Act in §§ 1 through 7. Section 74 amended Neb. Rev. Stat. § 43-1406 (as now codified in Cum. Supp. 1986). Section 43-1406 provides for paternity actions in the district court, and specifically provides "jurisdiction is hereby vested in the district court of the district where the child is domiciled or found to hear and determine such actions for support."

Neb. Rev. Stat. § 43-1411 (Cum. Supp. 1986) provides, "A civil proceeding to establish the paternity of a child may be instituted, in any district court . . . ." Either the mother or putative father, whether in a IV-D case or not, is entitled to have paternity determined in the district court, and such persons may not be deprived of the access to the courts provided in Neb. Const. art. I, § 13.

We point out the foregoing because we are conscious of our holdings that

> [w]here it appears that unconstitutional portions of an act can be separated from the valid portions and the latter enforced independent of the former, and it further appears that the invalid portions did not constitute such an inducement to the passage of the valid parts that they would not have been passed without them, the former may be rejected and the latter upheld.

*Safeway Stores, Inc. v. Nebraska Liquor Control Commission*, 179 Neb. 817, 826, 140 N.W.2d 668, 674 (1966). See *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 420 N.W.2d 685 (1988).

We hold that §§ 43-1601 to 43-1607 may not be separated in any fashion as to render any part of the Referee Act constitutional, and the entire act is determined to be unconstitutional as violating Neb. Const. art. I, § 13; art. II, § 1; art. III, § 18; and art. V, §§ 1 and 9.

We agree with the statements of the trial courts that the unconstitutionality of §§ 43-1601 et seq. does not impinge on

the general traditional authority of courts to appoint referees who may conduct various proceedings, hear evidence, and make recommendations to the district court; nor do we imply that referees may not be appointed under the regulations implementing Pub. L. No. 98-378, insofar as the regulations refer to recommendations of a child support referee, adopted by a district judge and reflected in a judge's order. See 45 C.F.R. § 303.101(c)(5) and (d)(2) (1987).

The judgment of the district court in each case is affirmed.

AFFIRMED.