**GOVERNMENT OF THE VIRGIN ISLANDS ex rel. JANICE MELCHIOR, Petitioner**

**v.**

**MICHAEL JOSEPH, Respondent**

Fam. No. S50/1998

Territorial Court of Virgin Islands

Division of St. Croix

December 17, 1999

Maureen Phelan Cormier, Esq., *Assistant Attorney General V.I. Department of Justice*, St. Thomas, U.S.V.I., *for the Petitioner*

Martial A. Webster, Esq., Christiansted, St. Croix, U.S.V.I., *for Respondent*

HOLLAR, *Judge*

### MEMORANDUM OPINION

This matter is before the Court on respondent's Motion to Vacate, Remand, or Set Aside the Order of the Hearing Officer of

19

the Division of Paternity and Child Support, Virgin Islands Department of Justice. Respondent asserts that the Order of the Administrative Hearing Officer, dated January 15, 1998, is unconstitutional, because it was entered without a hearing or notice. Respondent further argues that the Virgin Islands child enforcement statute impermissibly grants quasi-judicial powers to Hearing Officer(s) in violation of the Separation of Powers doctrine. While this Court holds that the quasi-judicial powers conferred upon the Virgin Islands Department of Justice, Office of Paternity and Child Support do not violate the Separation of Powers doctrine and the Virgin Islands Child Support statute, granting quasi-judicial powers to Hearing Officers, does not infringe upon the Revised Organic Act of 1954, as amended, the Court will reserve decision as to whether the Administrative Order dated January 15, 1998 was rendered in violation of the due process clause of the U.S. Constitution and the Revised Organic Act of 1954, as amended.

## I. FACTS AND PROCEDURAL HISTORY

On April 14, 1986, petitioner, Janice Melchior, filed a petition for child support against respondent, Michael Joseph. A trial in this matter was scheduled for September 8, 1986. On the day of trial, respondent appeared *pro se*, acknowledged paternity of the child, Ithiel Melchior-Joseph,[1] and agreed to pay petitioner One Hundred and Fifty Dollars ($150.00) per month in child support. A support Order was therefore entered for that amount.

Having failed to make regular monthly payments, petitioner, Janice Melchior, filed with the Court on February 13, 1987, a motion to show cause why respondent should not be held in contempt of the support Order. In response to petitioner's motion, the parties on April 6, 1987, entered into a stipulation whereby respondent was to make all monthly payments to the Cashier of the Attorney General's Office, on St. Thomas, no later than the 5th day of every month.

On December 12, 1988, petitioner filed for an increase in child support from One Hundred and Fifty Dollars ($150.000) to Four

---

[1] See document entitled Bureau of Vital Records-Department of Health-New York.

Hundred and Fifty Dollars ($450.00) per month. Respondent filed an opposition to this motion on February 7, 1989. The Court scheduled a hearing on the motion for March 29, 1989. At this hearing, the Court ordered respondent to file with the Court and the V.I. Department of Justice, Office of Paternity and Child Support, a completed and notarized Financial Declaration and a copy of his 1987 and 1988 V.I. Bureau of Internal Revenue tax return. The matter was then continued to Wednesday, May 3, 1989. At the May 3, 1989 hearing, counsel for petitioner informed the Court that respondent consented to an increase in child support payments from One Hundred and Fifty Dollars ($150.00) monthly to Four Hundred Dollars ($400.00) monthly, effective June 1, 1989. The Court entered an Order to that effect on June 12, 1989.

Shortly after entering the consent for an increase, the respondent's monthly payments were received irregularly and sporadically. The Court, in response to the motion to show cause why respondent should not be held in contempt of court for failing to comply with the provisions of the June 12, 1989 Order, scheduled a hearing on the matter for December 5, 1989. This hearing, however, was dismissed with prejudice as a result of respondent paying his child support arrearage before the scheduled date.

By August of 1992, respondent again became delinquent in his child support payments and the Government on behalf of the petitioner, on August 10, 1992, filed another motion to show cause why respondent should not be held in contempt of court for failure to comply with the Court's Order of June 12, 1989. Respondent again brought his child support payments up to date and thus averted a hearing on the matter.

As a result of an accumulation of substantial arrears, the Government of the Virgin Islands, on January 8, 1996, filed with the Court yet another motion to show cause regarding the same June 12, 1989 Court Order. A hearing was scheduled on the Government's motion for Thursday, March 14, 1996. Respondent filed a motion for continuance on March 12, 1996, stating that he had another pending matter in the District Court on the same date. This motion was granted by the Court and the matter was rescheduled for Monday, March 18, 1996. This matter did not come on for trial as respondent brought his child support arrears up to date.

On October 4, 1996, the Government of the Virgin Islands filed with the Court a motion requesting an order transferring respondent's action to the Administrative Hearing Officer of the Office of Paternity and Child Support in order to facilitate an expedited hearing for modification of child support. The Government's motion was granted by the Court by Order dated January 8, 1997. On May 30, 1997, the Government in response to respondent's failure to keep his child support payments current, filed in court another motion to show cause for failure to comply with the Court's Order of June 12, 1989. A hearing on the Government's motion was scheduled for June 25, 1997. At the conclusion of this hearing, the Court determined that respondent had an arrears balance of Two Thousand Four Hundred Dollars ($2,400.00). The Court then Ordered respondent to bring One Thousand Dollars ($1,000.00) to the September 3, 1997 hearing.

The respondent did not appear at the September 3, 1997 judicial hearing and the matter was continued to January 21, 1998. During this time, the Office of Paternity and Child Support, in response to petitioner's motion to modify support, *held a hearing on July 30, 1997 and October 15, 1997*. Following the administrative hearings, an Order dated January 15, 1998, increased respondent's child support payments from Four Hundred Dollars ($400.00) monthly to Five Hundred and Seventy Six Dollars ($576.00) monthly.

At the rescheduled judicial hearing on January 21, 1998, the Government of the Virgin Islands moved to transfer the action to the Family Division of the Territorial Court, Division of *St. Croix* for enforcement purposes. That motion was granted by Order dated April 1, 1998. A judicial hearing was later set for January 20, 1999. Respondent filed a motion for a continuance on December 28, 1998, stating that he was scheduled to attend an education seminar on that same date. The Government filed an opposition to respondent's motion for a continuance on January 8, 1999 contending that another continuance was not in the best interest of the child.

At the January 20, 1999 hearing, respondent failed to appear in person but was represented by counsel. At the conclusion of the hearing, the Court issued a warrant for respondent's arrest with a cash bail set at Two Thousand Dollars ($2,000.00). The matter was then continued to February 10, 1999. On February 5, 1999, respon-

dent by means of a check, paid to the V.I. Department of Justice, Paternity and Child Support Division the amount of the bail bond which was applied to the arrears. The Court, by Order dated February 8, 1999, vacated the bench warrant issued for respondent's arrest. The Court then scheduled a hearing for March 17, 1999.

On March 14, 1999, the respondent filed a motion for continuance and to vacate, remand, or set aside the administrative Order of January 15, 1998 increasing the support of FIVE HUNDRED SEVENTY-SIX DOLLARS and 00/100 ($576.00) monthly from FOUR HUNDRED DOLLARS and 00/100 ($400.00) monthly. In his motion, respondent argues that the powers conferred upon the Administrative Hearing Officer, by the Virgin Islands Legislature, is violative of the constitutional doctrine of Separation of Powers. The Court by Order dated March 17, 1999, granted respondent's motion for a continuance and ordered the Government to file a response to respondent's motion by April 30, 1999. The Court also informed petitioner that she was free to request a [further] modification of any existing support order increasing the current support amount, given respondent's recent Six Hundred Thousand Dollar and 00/100 ($600,000.00) award for attorney's fees, payable by the Government Employee's Retirement System.

In response to the Court's Order of March 17, 1999, petitioner filed a motion for temporary modification of support obligation in disregard of the child support guidelines on April 20, 1999. On May 6, 1999, respondent responded to petitioner's motion by filing a motion to stay respondent's motion for temporary modification in disregard of the guidelines. On May 7, 1999, the Government filed its response to respondent's motion to vacate, remand, or set aside the Administrative Order of January 15, 1998.

## II. DISCUSSION

In order to dispose of the respondent's pending motion dated March 14, 1999, this Court must address the following issues: (1) whether quasi-judicial powers conferred upon the executive agencies necessarily violate the constitutional Separation of Powers doctrine; (2) whether provisions of a *state constitution* prevail when there is an irreconcilable conflict with the provisions of a *state*

23

*statute*; (3) whether there was an irreconcilable conflict between the Nebraska Child Support Statute and the Nebraska State Constitution; (4) whether there was an irreconcilable conflict between the Minnesota Child Support Statute and the Minnesota State Constitution; and (5) whether there exists any irreconcilable conflict between the Revised Organic Act of 1954, as amended, and the Virgin Islands Child Support Statute; and (6) whether the Order of the Administrative Hearing Officer, dated January 15, 1998, was entered without a hearing and/or notice to the respondent.

## A. The Quasi-Judicial Powers Conferred Upon Executive Agencies Do Not Necessarily Violate the Constitutional Separation Of Powers Doctrine.

Respondent contends that the Order of the Administrative Hearing Officer dated January 15, 1998 is unconstitutional because the powers conferred upon the Administrative Hearing Officer by the Virgin Islands Legislature is violative of the constitutional doctrine of Separation of Powers.

The rationale for the doctrine of the "Separation of Powers" is based on the principle that when Government power is concentrated in one of its branches, tyranny and corruption may result. In designing the structure of our Government and dividing and allocating the sovereign power among three coequal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence. *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977). While the Constitution mandates that each of the three general branches of Government must remain entirely free from the control or coercive influence, direct or indirect, of either of the others, the framers did not require, and indeed rejected the notion that the three branches must be entirely separate. *Mistretta v. U.S.*, 488 U.S. 361 (1989).

The "Separation of Powers" principle, and non-delegation doctrine in particular, do not prevent Congress from obtaining assistance of coordinate branches. While the Constitution diffuses power in order to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable Government. In fact, it enjoins upon its branches separateness, but [permits]

interdependence, [demands] autonomy, but [allows for] reciprocity. *Mistretta, supra* at 359.

■ It has long been held by the Supreme Court that administrative agencies may perform quasi-judicial functions without violating the Separation of Powers doctrine. *Cromwell v. Benson*, 284 U.S. 22 (1932). Additionally, Congress may (1) encourage parties to settle a dispute out of court; (2) resort to arbitration; and (3) make available a quasi-judicial mechanism through which willing parties may, at their option, elect to resolve their differences without impermissible incursions on the Separation of Powers. *Commodity Futures Trading Commission v. Schor*, 478 U.S. 834 (1986). Thus, the adjudication of a narrow class of controversies by a quasi-judicial agency of the executive branch charged with regulation of the subject matter, does not violate the Separation of Powers doctrine.

## B. The Provisions Of A State Constitution Take Precedence If There Is An Irreconcilable Conflict With Provisions Of A State Statute.

■ It is well settled that constitutions constitute the supreme law and that constitutions preempt contrary statutes or rule and stand above legislative law. *Shields v. Gerhart*, 658 A.2d 924 (Vt. Sup. Ct. 1995). Where the constitution conflicts with any other rule, the constitution, being the highest law in the state, must prevail. *Smith v. Department of Health and Human Resources*, 407 So. 2d 498 (La. App. Ct. 1981). Thus, where a constitution speaks plainly on a particular matter, it must be given force and effect as the paramount law, and where a statute or rule and a constitutional provisi on are in conflict, the constitutional provision takes precedence and remains in effect. *Julian F. King v. Commonwealth of Pennsylvania*, 566 A.2d 323 (Pa. Commw. Ct. 1989).

## C. The Nebraska Child Support Statute Was Rendered Unconstitutional Because It Was Irreconcilably In Conflict With The Nebraska State Constitution.

Respondent contends that the powers conferred on the Administrative Hearing Officer by the Virgin Islands territorial statute violate the constitutional doctrine of the Separation of Powers in that the statute is similar and akin to those in Nebraska and

25

Minnesota where both statutes were held unconstitutional in their respective states. In support of his contention, Respondent cites the case of *Drennen v. Drennen*, 426 N.W. 2d 252 (Neb. Sup. Ct. 1988) and *Holmberg v. Holmberg*, 588 N.W. 2d 720 (Minn. Sup. Ct. 1999). Reliance on *Drennen* or *Holmberg*, however, is misplaced.

In *Drennen*, the *Nebraska Constitution* vests the judicial power of the state in its Supreme Court and the lower courts. Article V, § 1 of the *Nebraska Constitution* provides in part:

> "The judicial power of the state *shall be vested* in a Supreme Court, district courts, county courts, in and for each county, with one or more judges for each county, or with one judge for two or more counties, as the Legislature shall provide, and such other courts inferior to the Supreme Court as may be created by law." (Emphasis Provided).

Article V, § 9 of the *Nebraska Constitution* also provides:

> "The district courts *shall have* both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide. . . ." (Emphasis Provided).

However, the *Nebraska Referee Act*, enacted by ordinary statute, at 43-1602 states:

> "For any IV-D case, the *child support referee shall determine any matter* pertaining to (1) the establishment, modification, enforcement, and collection of child support, (2) the enforcement and collection of spousal support if such support is part of an order which provides for child support and the child and spouse are living in the same household, (3) visitation, and (4) paternity." (Emphasis Provided).

A reading of the Nebraska Constitution and the Nebraska Referee Act discloses *that they are in conflict with each other*. The Nebraska Referee Act mandated that certain child support cases, which arise in equity, be channeled into an expedited administrative process rather than the district court, thus divesting the district court of original jurisdiction in these child support cases. The grant

26

of exclusive and original jurisdiction to the referee denied persons chargeable with potential or delinquent child support obligations access to the district court as an original trier of fact. This was in direct violation of the Nebraska Constitution because the state statute usurped the jurisdiction of the district court. *Drennen v. Drennen, supra* at 258.

Additionally, the Nebraska Referee Act denied equal protection of the law in that it arbitrarily denied child support payers in "IV-D"[2] cases the same access to the courts as other child support payers inasmuch as the Referee Act directed the child support referees to hear "IV-D cases," while all non-"IV-D cases" would be heard by a district court judge. Because the Nebraska Supreme Court found no rational basis for the disparity in treatment between IV-D cases and non-IV-D cases, the State Supreme Court held this classification unreasonable and violative of the equal protection clause of the U.S. Constitution.

## D. The Minnesota Child Support Statute Was Rendered Unconstitutional Because It Was Irreconcilably in Conflict With The Minnesota State Constitution.

Closely analogous to the circumstances in *Drennen* is the fact scenario in *Holmberg v. Holmberg*, 588 N.W. 2d 720 (Minn. Sup. Ct. 1999). In *Holmberg*, the Minnesota Child Support Statute also mandated that *certain* child support cases, which arise in equity, be channeled into an expedited administrative process rather than the district court. Section 515.5511 of the Minnesota Child Support Statute provides in part:

> "Under this statute, *when the public authority* is a party or is providing services to a party, the administrative child support process is the forum for actions 'to obtain, modify and enforce' orders involving child and medical support, or modification of spousal maintenance if combined with a child support proceeding. A county may unilaterally expand the process to include contempt motions and actions to establish parentage. Although the statute pre-

---

[2] The phrase is used to refer to a case involving a dependent child, that is, a child who is receiving, or is eligible for aid from the state.

sumes that all counties will participate, if the *Commissioner of Human Services does not 'designate' a county for the process*, contested hearings *'shall be conducted in district court.'"* (Emphasis Provided).

The Minnesota Child Support Statute was in contravention of the Minnesota State Constitution which vested exclusive original jurisdiction in child support cases in the district court. Article III, § 1 of the Minnesota Constitution provides in part:

"The powers of Government are divided among the branches of Government, *and no member of one branch is allowed the power of any other branch "except in the instances expressly provided".* (Emphasis Provided).

Article VI, § 3 of the Minnesota Constitution provides:

"The district courts shall have original jurisdiction *in all 'civil' cases. . . ."* (Emphasis Provided).

Undeniably, Minnesota's Child Support Statute explicitly granted Administrative Law Judges powers, duties, and responsibilities conferred on judges of the district court to handle a certain class of child support cases. Not only were the ALJs given powers, duties and responsibilities of district court judges, but in some cases they had superior powers in that they were empowered to review and modify district court orders. Thus, the Minnesota Child Support Statute delegated to an administrative agency the district court's inherent equitable power as well as the powers conferred on it by the state constitution. The court found that the delegation of such powers infringed upon the district court's original jurisdiction.

As a result of the clash between the Minnesota Child Support Statute and the Minnesota Constitution, the court held that the administrative child support process violated the constitutional constraints regarding Separation of Powers for three separate and independent reasons. First, the administrative process infringed on the district court's original jurisdiction and inherent equitable powers. Second, the hearing officers' jurisdiction was not inferior to the district court's jurisdiction, as mandated by the Minnesota Constitution. Third, the administrative process empowered non

28

attorneys to engage in the practice of law, infringing on the court's exclusive power to supervise the practice of law. *Holmberg v. Holmberg,* supra at 729.

### E. There Is No Irreconcilable Conflict Between The Virgin Islands Constitution And The Virgin Islands Child Support Statute Which Would Render The Statute Unconstitutional.

The Revised Organic Act of 1954, as amended, patterned after the United States Constitution, is the basic charter or constitution of the Territory of the United States Virgin Islands. The Act recognizes a republican form of Government inasmuch as it vests legislative power in the legislature, executive power in the Governor and judicial powers in the Court. Unlike the provisions in the Nebraska and Minnesota constitutions, the Revised Organic Act of 1954, as amended,[3] does not vest any particular jurisdiction in the Territorial Court. Instead, the Act confers powers on the local legislature to vest such jurisdiction in the Territorial Court as it sees fit, subject to the exclusive and original jurisdiction of the District Court. 48 U.S.C. § 1611(b) (1987)[4] provides:

> "The legislature of the Virgin Islands *may* vest in the courts of the Virgin Islands established by local law jurisdiction over all causes in the Virgin Islands, over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction. Such jurisdiction shall be subject to the concurrent jurisdiction conferred on the District Court of the Virgin Islands by section 1612(a) and (c) of this title." (Emphasis Provided).

As a direct result of this power conferred on it by the Revised Organic Act of 1954, as amended, the local legislature, via territorial statute, vested certain powers in the Territorial Court with respect to family relations and child support. V.I. Code Ann. tit. 4, § 76(a) provides:

---

[3] The Revised Organic Act of 1954, as amended, was enacted by the United States Congress incident to its powers set forth at Article IV, § 3 of the United States Constitution.

[4] This section is also referred to as § 22 of The Revised Organic Act of 1954, as amended.

"Subject to the original jurisdiction conferred on the District Court by section 22 of the Revised Organic Act of 1954, as amended, effective October 1, 1991, the Territorial Court *shall* have original jurisdiction in all civil actions regardless of the amount in controversy; to supervise and administer estates and fiduciary relations; to appoint and supervise Guardians and trustees; to hear and determine juvenile, divorce, annulment and separation proceedings; to grant adoptions and changes of name; *to establish paternity; to legitimize children and to make orders and decrees pertaining to the support of relations.*" (Emphasis Provided).

The local legislature also conferred on the Attorney General, via territorial statute, the authority to effect an administrative procedure within the Division of Paternity and Child Support to establish and enforce child support orders. V.I. Code Ann. tit. 3, § 119 provides in pertinent part:

"The Attorney General *shall* effect an administrative procedure to establish and enforce support orders in Virgin Islands and interstate cases within the Paternity and Child Support Division and shall make and promulgate rules and regulations necessary to carry out its functions." (Emphasis Provided).

Thus, the Virgin Islands Child Support Statute neither divests the Territorial Court of jurisdiction in child support cases nor mandates that any particular class of cases be heard by the Hearing Officer. It merely provides an additional forum to child support complainants.

While the Nebraska Constitution and the Minnesota Constitution conferred directly all judicial power in its various Courts, the Revised Organic Act of 1954, as amended, confers no direct judicial power in the Territorial Court but instead vested the authority in the Virgin Islands Legislature to do so. The jurisdiction of the Office of Paternity and Child Support to hear child support cases is also conferred by local legislation.

The powers conferred on the hearing officers of the Division of Paternity and Child Support by the Legislature are limited and do not impermissibly infringe upon the province of the courts. In fact,

the powers so designated are similar to that outlined in *Cromwell v. Benson, supra*. Even though the hearing officers under our statute may issue subpoenas and conduct hearings, they have no equitable powers and while our hearing officers have the authority to modify and/or amend court-issued support orders, they may do so only if the case is transferred to the Division from the Court for that purpose. V.I. R & Regs. tit. 16, § 354-13(b) (1998) provides:

> "The hearing officer shall have jurisdiction to modify and/or amend orders originally established in the Territorial Court *if the action was transferred for this purpose to the Hearing Officer pursuant to an appropriate motion and order of the Court.*" (Emphasis Provided).

Since hearing officers do not have all the ordinary powers of a court, matters involving complex issues are routinely referred to the Territorial Court for judicial resolution. Hearing officers are also not authorized to issue contempt orders. Wilful failure of any party to comply with any order of the Administrative Hearing Officer, constitute contempt and such matters are referred to the Territorial Court. V.I. R & Regs. tit. 16, § 354-20 (1998). This section reads:

> "Wilful failure of any party to comply with any order of the Administrative hearing office, wilful failure to comply with V.I. Code Ann. tit. 14, § 585, or disobedience to any lawful process, rule, decree or command issued by an Administrative Hearing Officer shall constitute contempt, and the matter *shall* be referred to the Territorial Court and may be punished in conformity with V.I. Code Ann. tit. 14, Chapter 29, and the prevailing usage's at law." (Emphasis Provided).

■ More importantly, unlike the Nebraska statute that was found unconstitutional in *Drennen*, supra, the Virgin Islands statute, conferring powers on the hearing officer, does not divest the Territorial Court of jurisdiction of paternity and child support matters since a party has the option of choosing to file a paternity or child support matter with the agency or in the court. Even more significant is the fact that decisions and orders of the hearing officer

31

are subject to judicial review, whereby the Territorial Court hears appeals *de novo* as a matter of original, as opposed to appellate, jurisdiction. *Government of the Virgin Islands ex rel Leona Anthony v. Patrick Anthony*, 29 V.I. 201 (D.V.I. App. Div. 1994). The Virgin Islands Child Support statute is also distinguished from the Minnesota and Nebraska statutes because Minnesota and Nebraska *Constitutions* explicitly conferred jurisdiction of child support cases to various state and local courts while the *Revised Organic Act* of 1954, as amended, gave the Virgin Islands *Legislature* such authority. The Virgin Islands Legislature exercising its grant of authority enacted legislation conferring authority in the Territorial Court to adjudicate certain types of cases. Similarly, the Legislature in an effort to provide an additional forum to petitioners for child support, conferred jurisdiction of certain child support cases on the Attorney General. Non attorneys however, do not prepare, sign or file motions regarding child support or any other matters. These functions are performed by an Assistant Attorney General. It is therefore obvious that the jurisdiction of the Office of Paternity and Child Support is inferior to the jurisdiction of the Court and no conflict exists between the respective enabling statutes.

### F. The Petitioner Has Failed To Prove That Respondent Was Given Notice Of The October 15, 1997 Hearing.

Respondent alleges that the Order of the Administrative Hearing Officer dated January 15, 1998 is unconstitutional because it was entered without notice to him of the hearing. Respondent avers that neither he nor his counsel received notice of the hearing thus denying him the opportunity to fully respond to the petitioner's motion to increase his child support from Four Hundred Dollars ($400.00) to Five Hundred and Seventy Nine Dollars ($579.00). The petitioner has not addressed the respondent's contention, in that regard.

In her Order of January 15, 1998 increasing respondent's child support, the Administrative Hearing Officer referred to two hearings held prior to the issuance of the Order. On the July 30, 1997 hearing, both respondent and his counsel were present. On the subsequent hearing on October 15, 1997, neither respondent

32

nor his attorney was present and the record is silent as to what notice if any was given for that hearing date. While the Order of January 15, 1998 makes mention of the fact that said hearing officer heard sufficient testimony and argument of counsel, it is unclear whether the testimony of witnesses and argument of counsel referred to was for the July 30, 1997 hearing only or for both the July 30, 1997 and October 15, 1997 hearings. Accordingly, the Court is without sufficient evidence at this juncture to rule that the requisite due process notice was given to respondent and/or his counsel of the October 15, 1997 hearing prior to the January 15, 1998 Order.

## III. CONCLUSION

Respondent has failed to demonstrate that: (1) the quasi-judicial powers conferred upon the executive agency necessarily violate the Constitutional Separation of Powers doctrine; and (2) that the Virgin Islands child support statute is in conflict with the Revised Organic Act of 1954, as amended. However, because the petitioner has failed to prove that the hearing officer's Order of January 15, 1998 was entered after hearing and notice to the respondent and/or his counsel of each hearing, the Court will conduct an evidentiary hearing on a subsequent date to determine whether respondent was given notice of the October 15, 1997 hearing.